UNITED STATES of America, Plaintiff,

v.

Mark M. JACKSON, and Robert Martinez, Jr., Defendants.

Nos. 94–40001–01–SAC, 94–40001–02–SAC.

United States District Court, D. Kansas.

March 30, 1994.

**1490**

Thomas J. Bath, Jr., James L. Eisenbrandt, Bryan Cave, Overland Park, KS, for defendant Mark M. Jackson.

Thomas M. Bradshaw, Daniel O. Herrington, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for defendant Robert Martinez, Jr.

Richard L. Hathaway, Office of U.S. Atty., Topeka, KS, for plaintiff U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

This is a criminal case in which the defendants are charged by a thirty-two count indictment for their association and conduct with Parkview Hospital (Parkview), a private, for profit psychiatric hospital in Topeka, Kansas. The defendant Mark Jackson worked as the administrator for Parkview while Robert Martinez was under contract to assist with Parkview's marketing efforts. The indictment alleges that Jackson and Martinez bribed Louis Albert Garcia, an employee with the United States Postal Service (Postal Service), to refer patients to Parkview. Louis Garcia was an employee assistance counselor with the Postal Service and provided assessment, referral, and counseling services for Postal Service employees and family members having chemical dependency or behavioral problems.

Count one charges both defendants with conspiring to defraud the United States of the faithful services of its employee Louis Garcia, in violation of 18 U.S.C. § 371. According to the indictment, the defendant Martinez asked Louis Garcia in October of 1990 to meet with the defendant Jackson. On November 9, 1990, the three met in Topeka, Kansas, and Jackson offered Garcia a monthly payment of $3,000 in return for referrals. Jackson advised that their arrangement would be documented as a consulting agreement and that Garcia would visit Topeka periodically to give the impression of performing training services. From November of 1990 to December 1991, Garcia referred forty-three patients to Parkview.

For each monthly payment to Garcia, both defendants are also charged with two counts. The even-numbered counts from two through thirty charge the defendants with bribery of Garcia in giving something of value in order to influence Garcia's official acts, in violation of 18 U.S.C. § 201(b)(1)(A). The odd-numbered counts from three through thirty-one charge the defendants with aiding and abetting Louis Garcia in the supplementation of his federal salary, in violation of 18 U.S.C. §§ 2 and 209. Count thirty-two charges that the defendants endeavored to obstruct and impede the federal grand jury investigation by advising Garcia to testify falsely that the payments were made as lawful compensation for consulting services, in violation of 18 U.S.C. § 1503.

## MOTIONS TO SEVER (Dks. 24 and 34).

The defendant Martinez moves to sever (Dk. 24) arguing that certain evidence admissible only against Jackson would be highly prejudicial to Martinez in a joint trial. Such evidence includes the testimony of Beverly Rice, a Parkview administrative assistant, that Jackson dictated several letters to Garcia in December of 1990 thanking him for his marketing and training efforts and that Jackson directed her to backdate the letters to make it appear as if they were written over a one-year period. The defendant Martinez contends the letters are not admissible against him because he did not dictate, write, or prepare them. The defendant Martinez believes the jury will be unable to compartmentalize this evidence and consider it only against Jackson.

The defendant Jackson moves to sever (Dk. 34) making the same argument that evidence admissible only against Martinez would be unfairly prejudicial to Jackson in a joint trial. In May of 1990, Louis Garcia entered into a consulting agreement with Bowling Green Hospital, a psychiatric and substance abuse treatment center in Houston, Texas, and received monthly payments of $2500. Robert Martinez worked in the marketing department of Bowling Green Hospital and, according to Garcia, threatened

Garcia with telling the Postal Service about the agreement unless he referred patients. The defendant Jackson also argues that Garcia's testimony in many instances inculpates Jackson even though the statements are attributed solely to Martinez. Jackson believes this presents *Bruton* problems curable only through separate trials.

■ Rule 8 of the Federal Rules of Criminal Procedure provides that "two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transactions constituting an offense or offenses." The defendants here do not argue they were joined improperly under Rule 8. Even if joinder is proper under Rule 8, severance is possible under Rule 14 when a defendant or the government would be prejudiced. *Zafiro v. United States*, — U.S. —, 113 S.Ct. 933, 122 L.Ed.2d 317, 324 (1993).

■ Rule 14 of the Federal Rules of Criminal Procedure provides in pertinent part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance or provide whatever other relief justice requires ...

In deciding a motion to sever, the district court must "weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials." *United States v. Hollis* 971 F.2d 1441, 1456 (10th Cir.1992) (citation omitted), *cert. denied*, — U.S. —, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993). Because severance is a matter of judicial discretion and not a right of the parties, the defendant must carry " 'a heavy burden of showing real prejudice to his case.' " *United States v. McConnell*, 749 F.2d 1441, 1444 (10th Cir.1984) (quoting *United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir.), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2985, 2986, 64 L.Ed.2d 854 (1979)). "The Supreme Court has emphasized that trial courts have 'a continuing duty at all stages of the trial to grant a severance if prejudice does appear.' " *United States v.*

*Peveto*, 881 F.2d 844, 857 (10th Cir.), *cert. denied*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989) (quoting *Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960)).

■ The federal criminal justice system prefers and values joint trials. *Zafiro*, — U.S. —, 113 S.Ct. 933, 122 L.Ed.2d at 324. Joint trials promote economy and efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent trials." *Richardson v. Marsh*, 481 U.S. 200, 209, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987). These interests are most apparent when co-defendants are jointly indicted and face common conspiracy charges. *See United States v. Jenkins*, 904 F.2d 549, 557 (10th Cir.), *cert. denied*, 498 U.S. 962, 111 S.Ct. 395, 112 L.Ed.2d 404 (1990). Consequently, "[c]ourts generally adhere to the principle that 'those indicted together, especially co-conspirators, should be tried together.' " *Peveto*, 881 F.2d at 857 n. 16 (quoting 8 J. Moore, W. Taggert & J. Wicker, *Moore's Federal Practice* ¶ 14.05, p. 14–82 (2 ed. 1989)); *United States v. Petersen*, 611 F.2d at 1332 (" '[m]utual participation of defendants in an offense or series of offenses is considered a logical, basic ground for refusing to grant a motion to sever' ") (quoting *United States v. Riebold*, 557 F.2d 697 (10th Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977)). "In the context of conspiracy, severance will rarely, if ever, be required." *United States v. Searing*, 984 F.2d 960, 965 (8th Cir.1993) (citation omitted). Joint trials "reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague" and provide "the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir.), *cert. denied*, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987) (citations omitted).

■ The Supreme Court recently summarized the law on severance under Rule 14 and identified certain relevant circumstances and their relative weight in deciding a request to sever:

We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. *See Kotteakos v. United States*, 328 U.S. 750, 774–775, 90 L.Ed. 1557, 66 S.Ct. 1239 [1252–1253] (1946). Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. *See Bruton v. United States*, 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. *See, e.g., Tifford v. Wainwright*, 588 F.2d 954 (5th Cir.1979) (per curiam). The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh*, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. *See* 481 U.S. at 211 [107 S.Ct. at 1709]. *Zafiro*, —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d at 325. Even upon a showing of some risk of prejudice, the trial court is not required to sever for it retains the discretion to create a remedy which should abate that risk. *Id.*

■ Going to the defendants' specific arguments of prejudice, the court finds that they are not sufficient, individually or together, to require separate trials. The possible "spillover effect" of damaging evidence against the codefendant does not compel a severance. *United States v. Cardall*, 885 F.2d 656, 668 (10th Cir.1989). Nor is it sufficient to contend that separate trials would mean a better chance for acquittal. *Peveto*, 881 F.2d at 857. The fact that a defendant's involvement is unique or limited to certain aspects of the alleged conspiracy is not a circumstance that requires severance. *See Cardall*, 885 F.2d at 668. " '[E]vidence of prior criminal offenses of one defendant does not prejudice his co-defendants to the level requiring severance.' " *United States v. Mason*, 982 F.2d 325, 327 (8th Cir.1993) (quoting *United States v. Robinson*, 774 F.2d 261, 267 (8th Cir.1985)). Speculation about spillover does not overcome the dual presumption that a jury will abide by the court's instruction to consider each defendant separately and will capably sort out the evidence. *United States v. Lopez*, 6 F.3d 1281, 1286 (7th Cir.1993).

■ The denial of severance is entirely proper when it is alleged that the defendants are all members of the same conspiracy "and, as such, the acts of one ... [are] attributable to the others." *See Petersen*, 611 F.2d at 1332. The defendants have not demonstrated real prejudice in the form of the jury's inability to compartmentalize the evidence or the court's inability to control the evidence and arguments. At this point, the court believes any potential for prejudice here can be effectively addressed by instructions informing the jury that the charges and evidence shall be considered individually against each defendant, that the evidence admitted against only one defendant shall not be considered against another defendant, and that no inferences should be drawn from a defendant's exercise of the right to silence. *See Zafiro*, —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d at 326.

■ As for the introduction of incriminating statements by other defendants, "*Bruton*, ..., does not hold that defendants in joint trials involving *Bruton* problems are entitled to separate trials." *United States v. Hill*, 901 F.2d 880, 883 (10th Cir.1990). *Bru-*

*ton* problems, however, are avoided with a severance, but this is not a step required by *Bruton. Id.* The defendants have not demonstrated that the redaction of any offending references and the use of limiting instructions would be ineffective. *See Richardson v. Marsh*, 481 U.S. at 211, 107 S.Ct. at 1709. "Severance is required 'only where admission of the statement in its edited form distorts the meaning of the statement or excludes information substantially exculpatory of the declarant.'" *United States v. Comeaux*, 955 F.2d 586, 590 (8th Cir.) (quoting *United States v. Long*, 900 F.2d 1270, 1279 (8th Cir.1990)), *cert. denied,* —— U.S. ——, 113 S.Ct. 135, 121 L.Ed.2d 89 (1992). Most, if not all, of the referenced statements, arguably, may be admissible against each defendant as a statement of a co-conspirator made in furtherance of a conspiracy under Fed. R.Evid. 801(d)(2)(E).[1] *See United States v. Carrazana*, 921 F.2d 1557, 1567 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 191, 116 L.Ed.2d 152 (1991). Consequently, the statements would be admissible in separate trials. *See United States v. Ras*, 713 F.2d 311, 315 (7th Cir.1983). The burden rests with the defendants to make a strong showing of prejudice and demonstrate that they would be denied a fair trial. A finding of prejudice may not be based on conjecture. *U.S. v. Dickey*, 736 F.2d 571, 590 (10th Cir.), *cert. denied*, 469 U.S. 876, 105 S.Ct. 240, 83 L.Ed.2d 179 (1984). At this time, the defendants have not established the serious prejudice necessary for this court to conduct separate trials.

## JOINT MOTION TO COMPEL NOTICE AND DISCLOSURE OF RULE 404(B) EVIDENCE (Dk. 26).

The defendants seek an order compelling the United States to provide at least thirty days before trial notice and disclosure of the nature of any evidence of other crimes, wrongs or acts it intends to introduce at trial in its case-in-chief, for impeachment, or for possible rebuttal pursuant to Rule 404(b). The government objects to placing itself in "the impossible position of speculating about" possible impeachment or rebuttal evidence. At the hearing, the government represented that the arrangement between Louis Garcia and Bowling Green Hospital is the only evidence the government intends to use that arguably falls under Rule 404(b).

▮ The pretrial notice requirement was recently added and became effective December 1, 1991. It was "intended to reduce surprise and promote early resolution of the issue of admissibility." Fed.R.Evid. 404(b) Advisory Notes to 1991 Amendment. The Notes also indicate that the notice need not take a specific form and need only inform the defendant of the "general nature of the evidence of extrinsic acts." *Id.* The notice "need not provide precise details regarding the date, time, and place of the prior acts," but it must characterize the prior conduct to a degree that fairly apprises the defendant of its general nature. *United States v. Long*, 814 F.Supp. 72, 74 (D.Kan.1993). The notice requirement "is not a tool for open ended discovery." *United States v. Sims*, 808

---

1. In reply, the defendant Jackson argues that 801(d)(2)(E) does not extend to Garcia testifying as to what Martinez said in a phone call more than a year after the conspiracy ended. A co-conspirator's statement made after the conspiracy terminated does not come within 801(d)(2)(E). "[A] conspiracy terminates when its central purposes have been attained." *United States v. Mayes*, 917 F.2d 457, 464 (10th Cir.1990) (citations omitted), *cert. denied*, 498 U.S. 1125, 111 S.Ct. 1087, 112 L.Ed.2d 1192 (1991). Generally, "the duration of a conspiracy does not extend to attempts to conceal the crime." *United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir.1984) (citations omitted). The defendant is wrong in assuming that Martinez' statement is inadmissible against him simply because it was made after the last payment to Garcia. A statement made after the original conspiracy ends may still be

admissible as a statement made under a separate and distinct conspiracy to obstruct justice. *See, e.g., United States v. Townsley*, 843 F.2d 1070, 1084, *modified on other grounds*, 856 F.2d 1189 (8th Cir.1988), *cert. dismissed*, 499 U.S. 944, 111 S.Ct. 1406, 113 L.Ed.2d 461 (1991). Statements are admissible under 801(d)(2)(E) even when the particular conspiracy is not charged in the indictment. *United States v. Beckham*, 968 F.2d 47, 51 n. 2 (D.C.Cir.1992); *United States v. Coppola*, 526 F.2d 764, 770 (10th Cir.1975). "'[C]oncealment is sometimes a necessary part of a conspiracy, so that statements made solely to aid the concealment are in fact made during and in furtherance of the ... [original] conspiracy.'" *United States v. Esacove*, 943 F.2d 3, 5 (5th Cir.1991). The propriety of admitting this challenged statement against Jackson is not a resolved issue.

F.Supp. 607, 610–11 (N.D.Ill.1992). Nor does it require the government to produce documents or specific evidence from which the government has learned or will introduce the bad acts. *United States v. Williams*, 792 F.Supp. 1120, 1134 (S.D.Ind.1992); *see United States v. Alex*, 791 F.Supp. 723, 728 (N.D.Ill.1992) (Defendant's "demand for specific evidentiary detail including dates, times, places and persons involved is wholly overbroad.") Finally, the Advisory Notes make clear that the prosecution must "provide notice, regardless of how it intends to use the extrinsic act evidence at trial, i.e., during its case-in-chief, for impeachment or for possible rebuttal."

■ If it has not done so already, the government is ordered to comply with the notice requirement of Rule 404(b) as interpreted above. The court grants the defendants' motion for disclosure at least thirty days prior to trial.

## JOINT MOTION TO DISMISS (Dk. 28).

Pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, the defendants move to dismiss some or all of the counts on the following grounds:

(1) The charge of supplementing a government employees' salary, 18 U.S.C. § 209, is a lesser included offense of bribing a government employee, 18 U.S.C. § 201(b)(1)(A);

(2) The indictment fails to state an offense of violating 18 U.S.C. § 209;

(3) Count one improperly charges a conspiracy to violate a postal service code of conduct;

(4) Counts one through thirty-one are multiplicitous because they charge defendants with conspiring to bribe a government employee thirty one times;

(5) Count one charges defendants under the "defraud" clause of the general conspiracy statue when the conspiracy alleged

should be charged under the "offense" clause;

(6) Count thirty-two of the indictment improperly charges witness tampering under 18 U.S.C. § 1503; and

(7) Garcia's employment as a postal service employee does not satisfy the "public official" requirement of 18 U.S.C. § 201.

The court will take up these arguments *seriatim.*

1. *Each count of aiding and abetting unlawful salary supplementation should be dismissed as constituting a lesser included offense of bribery.*

The defendants argue that the crime of supplementing the salary of a government employee, 18 U.S.C. § 209, is a lesser included offense of bribing a government employee, 18 U.S.C. § 201(b)(1)(A). They analogize § 209 to the gratuity statute at § 201(c) which the courts have held is a lesser included offense of bribery. *See, e.g., United States v. Johnson*, 647 F.2d 815, 818 (8th Cir.1981); *United States v. Crutchfield*, 547 F.2d 496, 500 (9th Cir.1977). They also cite *United States v. Martel*, 792 F.2d 630, 638 (7th Cir.1986),[2] as an instance where a § 209 instruction was given as a lesser included offense of compensating a government employee for representational services, in violation of 18 U.S.C. § 203(b). Finally, they believe there is "no realistic likelihood" that the prosecution will prove the defendants bribed Garcia and not prove the defendants supplemented his compensation. The defendants argue prejudice in charging the defendants with the greater offense and the lesser included offense in separate counts. The government succinctly responds that this very issue was settled by the Ninth Circuit in *United States v. Raborn*, 575 F.2d 688 (9th Cir.1978).

■ The Supreme Court in *Schmuck v. United States*, 489 U.S. 705, 715–21, 109 S.Ct. 1443, 1450–53, 103 L.Ed.2d 734 (1989), adopted the "traditional" or "elements" test[3]

---

**2.** The Seventh Circuit did not address the propriety of the lesser included instruction other than to say that the defendant had waived his objection by tendering his own version of the instruction which the government approved and the

district court then gave. *United States v. Martel*, 792 F.2d 630, 638 (7th Cir.1986).

**3.** "This traditional (or elements) test is sometimes referred to as the impossibility test because if the elements of a lesser offense must be a

for deciding the issue of a lesser included offense:

> Under this test, one offense is not "necessarily included" in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c).

489 U.S. at 716, 109 S.Ct. at 1450. This comparison of elements is made from the statutes that define the offenses and not from the conduct eventually proved at trial. *Id.* at 716–17, 109 S.Ct. at 1450–51.

■ The Ninth Circuit in *United States v. Raborn,* 575 F.2d at 691–92, employed the elements approach in holding that a § 209 offense is not a lesser included offense of a § 201(c) offense. Specifically, "§ 209 requires proof of an additional element that § 201(c) does not, namely that the public employee received salary or a supplement to salary 'as compensation for services as an employee of the United States.'" 575 F.2d at 692. The same difference exists between § 201(b)(1)(A) and § 209. Section 201(b)(1)(A) does not require proof that the public official received something of value as compensation for services as a government employee. *See Raborn,* 575 F.2d at 692. Instead, § 201(b)(1)(A), as with the entire § 201, is aimed at criminalizing the giving of anything of value in exchange for certain official decisions or actions. *Id.; see United States v. Muntain,* 610 F.2d 964, 968 (D.C.Cir.1979); *See Crandon v. United States* 494 U.S. 152, 158–59, 110 S.Ct. 997, 1001–02, 108 L.Ed.2d 132 (1990) ("While some sections [§§ 201–204] focus on bribes or compensation offered as a quid pro quo for Government acts, and apply to persons before and after commencing Government service, § 209 is a prophylactic rule that aims at the source of Government employee's compensation.").

The court denies the defendants' motion to dismiss the odd-numbered counts from three through thirty-one, as the conduct prohibited by § 209 is not a lesser included offense of bribery at § 201(b)(1)(A).

### 2. *The indictment fails to state an offense of violating 18 U.S.C. § 209.*

The defendants contend that none of counts alleging unlawful supplementation of a government employee's salary contains the necessary *mens rea* element. Each of these counts makes the same relevant allegations with the only differences being the date and the amount of payment to Garcia:

> That on or about ..., the defendants, ..., did aid and abet Louis Garcia, an employee of the United States Postal Service, ..., wilful receipt from a source other than the Government of the United States, the amount of ..., as a contribution to or supplementation of Garcia's salary, as compensation for Garcia's services as Employee Assistance Program counselor of the United States Postal Service. The foregoing is in violation of Title 18 United States Code, Sections 2 and 209.

The defendants maintain the indictment would permit the jury to find them guilty of a felony without proof that they willfully violated § 209.

■ "An indictment is sufficient 'if it contains the elements of the offense charged, putting the defendant on fair notice of the charge against which he must defend and if it enables a defendant to assert an acquittal or conviction in order to prevent being placed in jeopardy twice for the same offense.'" *United States v. Poole,* 929 F.2d 1476, 1479 (10th Cir.1991) (quoting *United States v. Staggs,* 881 F.2d 1527, 1530 (10th Cir.1989), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990)). In the Tenth Circuit, it is usually enough for the indictment to track the statute when the statute adequately expresses all of the elements to the offense. *United States v. Dunn,* 841 F.2d 1026, 1029 (10th Cir.1988). An indictment is held only to minimal constitutional standards. *United States v. Edmonson,* 962 F.2d 1535, 1541 (10th Cir.1992).

*Horn,* 946 F.2d 738, 744 (10th Cir.1991) (citation omitted).

subset of the greater offense, then it is impossible to commit the greater offense without first having committed the lesser." *United States v.*

Neither side cites direct authority on their respective positions regarding the need to allege the mental intent of the person charged with aiding and abetting. The court's independent research reveals that knowledge or willfulness need not be alleged in the indictment for aiding and abetting. In *United States v. Krogstad,* 576 F.2d 22, 29 (3rd Cir.1978), the court that "[w]illfulness need not be expressly stated in the indictment charging a violation of 18 U.S.C. § 2." *See United States v. Garrison,* 527 F.2d 998, 999 (8th Cir.1975). The court finds that the challenged counts sufficiently charge the designated offense and provide fair notice to the defendants. The court will give instructions on aiding and abetting that require the jury to find the defendants acted with the necessary knowledge and intent before returning a guilty verdict on these counts.

3. *Count one improperly charges a conspiracy to violate a postal service code of conduct.*

Count one, in relevant part, charges the defendants with conspiring to defraud the United States "by depriving it of the faithful and honest services of its employee Louis Albert Garcia." Prior to this count, there are five paragraphs of general allegations. The defendants focus on paragraph five, which alleges:

As a Postal employee Garcia was prohibited by his Code of Ethical Conduct from using his Postal Service office for private gain, and specifically, was prohibited from soliciting or receiving, directly or indirectly, any compensation from any source other than the Postal Service for any act or omission as an employee. Garcia was further prohibited from receiving compensation, payment of expense, or anything of monetary value under circumstances in which acceptance might result in, or create the appearance of, a conflict of interest.

The defendants construe these allegations as meaning that the defendants are charged with violating an ethical code. The defendants alternatively contend that the jury could be confused about this reference to an ethical code, and they ask the court to strike this paragraph as surplusage. The court will address the latter point in the defendant Jackson's motion to strike.

The indictment does not charge the defendants with violating the Postal Service's ethical code of conduct but with conspiring to defraud the United States of its faithful and honest services of its employee, Louis Garcia. It is well settled that 18 U.S.C. § 371 reaches such conspiracies to defraud the United States. *See, e.g., Glasser v. United States,* 315 U.S. 60, 64, 62 S.Ct. 457, 462, 86 L.Ed. 680 (1942); *United States v. Del Toro,* 513 F.2d 656, 663 (2nd Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). Depriving the United States of one of its lawful governmental functions by dishonesty comes within the scope of defrauding under § 371. *Glasser,* 315 U.S. at 66, 62 S.Ct. at 463. Count one properly charges the defendants with violating 18 U.S.C. § 371 and not the Postal Service's ethical code of conduct.

4. *The conspiracy, bribery and unlawful salary supplementation counts are multiplicitous because they seek multiple punishments for the same alleged conduct.*

The defendants contend that counts four through thirty-one should be dismissed as multiplicitous of counts two and three. The defendants point out that Garcia was paid in fifteen separate checks and that the indictment simply repeats the charges of bribery and aiding and abetting the supplementation of a government employee's salary for each check. The defendants allege the separate payments were made pursuant to a consulting agreement which called for Garcia to receive $36,000 annually for consultation and training services. The government alleges the agreement is not for consulting services but for referring patients. The defendants consider this case to be one instance of alleged bribery with the payments spread over fifteen separate occasions. The government asks the court to consider each payment to be a separate and distinct bribe, as well as supplementation of Garcia's salary.

An indictment is multiplicitous when "it charges a single offense in more than one count." *United States v. Haddock*

956 F.2d 1534, 1546 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992). Though not a fatal error for an indictment, multiplicity presents the danger of multiple sentences for one offense and the improper impression to the jury that the defendant committed more than one crime. *United States v. Morehead,* 959 F.2d 1489, 1504 (10th Cir.1992). The argument here is not that the same act or transaction violates two different statutes.[4] Instead, the dispute is with the government charging each successive act as a separate crime under the same statue. On such a challenge, the court must identify the unit of prosecution of the offense charged. *Sanabria v. United States* 437 U.S. 54, 67–70, 98 S.Ct. 2170, 2180–82, 57 L.Ed.2d 43 (1978). "This inquiry as to what constitutes the correct unit of prosecution focuses in part on the identification of the key element of the federal offense." *United States v. Esch,* 832 F.2d 531, 541 (10th Cir. 1987), *cert. denied,* 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242 (1988). The court starts with deciding if the proper unit of prosecution can be determined from the language of the statute. *United States v. Song,* 934 F.2d 105, 108 (7th Cir.1991). "When the intent of Congress as to the unit of prosecution cannot be clearly discerned, doubt must be resolved in favor of lenity." *United States v. Long,* 787 F.2d 538, 539 (10th Cir. 1986). As applied, the rule of lenity prevents multiple charges from single transaction. *Id.*

 The defendants argue for the rule of lenity saying that the bribery statute and the unlawful supplementation of a federal employee's salary statute are ambiguous as to the respective units of prosecution. The government impliedly argues that the unit of prosecution for both statutes is the payment or receipt of something of value. Relying on the statute's language and certain legislative history, one court has held that the unit of prosecution is the bribe:

> Congress has decided that bribery and kindred practices imperil the very nature of democratic government. It has legislated a vigorous attack on those practices. The

only intention we can reasonably ascribe to Congress is that bribers may be punished separately for separate acts of bribery. We note, too that courts construing other bribery laws have discarded the "installment" theory of bribery in favor of the view that each bribe warrants a separate penalty.

*United States v. Anderson* 509 F.2d 312, 333 (D.C.Cir.1974) (footnotes omitted), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975). The same seems to be true for a § 209 violation. "[S]ince the prohibited conduct is merely the receipt or the payment of the salary supplement, it follows that a violation of § 209(a) either is, or is not, committed at the time the payment is made." *Crandon v. United States,* 494 U.S. at 159, 110 S.Ct. at 1002. For both offenses, the key element is the payment or receipt, and the offense is completed each time a payment or receipt is made. *Cf. United States v. Esch,* 832 F.2d at 541–42 (Each photograph of a child, though taken in a single photographing session, could be properly charged as separate count of sexual exploitation of children). With each count, the government must prove some different facts. As now charged and argued by the government, this is not a case of different counts being charged on a single impulse or on separate parts of a whole payment. *See United States v. Eaves,* 877 F.2d 943, 947 (11th Cir.1989), *cert. denied,* 493 U.S. 1077, 110 S.Ct. 1129, 107 L.Ed.2d 1035 (1990). " 'If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.' " *Blockburger v. United States,* 284 U.S. 299, 302, 52 S.Ct. 180, 181, 76 L.Ed. 306 (1932) (quoting *Wharton's Criminal Law,* § 34). The court denies the defendants' motion to dismiss for multiplicity.

5. *It is improper to charge defendants under the "defraud" clause of the general conspiracy statute when the government is actually charging defendants with conspiring to commit an offense against the United States.*

 Count one charges the defendants with conspiring to defraud the United States

---

4. In deciding the first ground of the defendants' motion to dismiss, the court rejected that argument.

"by depriving it of the faithful and honest services of its employee Louis Albert Garcia" in violation of 18 U.S.C. § 371. Two types of conspiracies are proscribed by the two disjunctive clauses of § 371: (1) conspiracies to commit an offense against the United States as elsewhere defined in the criminal code; and (2) conspiracies to defraud the United States. *United States v. Barker Steel Co., Inc.,* 985 F.2d 1123, 1131 (1st Cir.1993). The defendants contend the government wrongly charged them under the defraud clause instead of the offense clause. Citing *United States v. Minarik* 875 F.2d 1186 (6th Cir. 1989), defendants argue that when the underlying conduct is chargeable under specific criminal provisions then the government is precluded from charging a conspiracy under the defraud clause. Courts consistently have rejected such a broad reading of *Minarik.*

In *Minarik,* the Sixth Circuit held that the defendants could not be convicted on the indicted charge of conspiring to defraud the United States when the evidence showed they conspired to violate a specific statutory offense. Most courts, including the Sixth Circuit and the Tenth Circuit, have narrowly limited *Minarik* to its facts. *See, e.g., United States v. Sileven,* 985 F.2d 962, 965 (8th Cir.1993); *United States v. Hurley,* 957 F.2d 1, 3 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 60, 121 L.Ed.2d 28 (1992). In *United States v. Sturman,* the Sixth Circuit distinguished *Minarik* as involving a limited conspiracy and the violation of a single specific statute. 951 F.2d 1466, 1473–74 (6th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2964, 119 L.Ed.2d 586 (1992). In *United States v. Mohney,* the Sixth Circuit confined *Minarik* to its specific facts:

> The court in *Minarik* reached its decision based on the specific facts of that case. *Minarik* did not require that all prosecutors charge all conspiracies to violate a specific statute under the offense clause of section 371. *Minarik* stated that "the 'offense' and 'defraud' clauses *as applied to the facts of this case* are mutually exclusive...." *Minarik,* 875 F.2d at 1187 (emphasis added).

949 F.2d 899, 902 (6th Cir.1991). The Second Circuit reads *Minarik* as limited to those instances where prosecution under the defraud clause would cause substantial confusion or would prejudice the defendant's ability to prepare for trial. *United States v. Bilzerian,* 926 F.2d 1285, 1301 (2nd Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991); *Hurley,* 957 F.2d at 3 (Primary problem in *Minarik* was that the government's shifting theory of the case and its use of the defraud clause created confusion over what conduct was being charged as illegal). The Eleventh Circuit rejected *Minarik* as not controlling and as limited to its facts. *United States v. Harmas,* 974 F.2d 1262, 1266 (11th Cir.1992) (Cited *Dennis v. United States,* 384 U.S. 855, 863–64, 86 S.Ct. 1840, 1845–46, 16 L.Ed.2d 973 (1966), in which the Supreme Court held that a specific statute addressing the filing of false statements "does not, in and of itself, make the conspiracy to defraud clause of § 371 unavailable to the prosecution.") Finally, the Tenth Circuit followed the Second Circuit's approach in *Bilzerian* and distinguished *Minarik* on its facts. *United States v. Notch,* 939 F.2d 895, 901 (10th Cir.1991).

■ The defendants do not attempt to argue that this case fits the limited circumstances found in *Minarik.* The facts charged here do not constitute only a conspiracy to violate a single statute. The defendants conduct violates at least two different statutes. The alleged conspiracy extends beyond statutory offenses and includes efforts at concealing the offensive conduct. The defendants' ability to prepare for trial is not prejudiced, as the government adequately delineates the overt acts in count one. The court denies the defendants' motion to dismiss count one.

6. *Witness tampering must be charged under § 1512.*

■ The defendants move to dismiss count thirty-two arguing that witness tampering can no longer be brought under the obstruction of justice clause of 18 U.S.C. § 1503. Count thirty-two charges defendants with endeavoring to obstruct a federal grand jury investigation by advising Garcia to falsely state that he was receiving money from Parkview in exchange for his consulting

services. In support of their argument, the defendants rely on the holdings and reasoning in *United States v. Hernandez*, 730 F.2d 895 (2nd Cir.1984), and *United States v. Masterpol*, 940 F.2d 760 (2nd Cir.1991).

In *Hernandez*, the Second Circuit held that the enactment in 1982 of the Victim and Witness Protection Act, Pub.L. No. 97–291, 96 Stat. 1248 (1982) took witness tampering out of § 1503's purview by deleting all references to witnesses in that section and substituted a new provision, § 1512, entitled "Tampering with a witness, victim, or an informant." 730 F.2d at 898. In *Masterpol*, the Second Circuit reaffirmed *Hernandez* and rejected a narrow reading of it. 940 F.2d at 762–63. Based on a 1988 amendment to § 1512(b), which added "corruptly persuades," the Second Circuit found the plain import of Congress' actions was to remove witness tampering from § 1503. *Id.*

The court's research reveals that the majority of the circuits have rejected the Second Circuit's holding that § 1512 is the exclusive statute for charging witness tampering. *United States v. Moody*, 977 F.2d 1420, 1424 (11th Cir.1992), *cert. denied*, ___ U.S. ___, 113 S.Ct. 1348, 122 L.Ed.2d 730 (1993); *United States v. Kenny*, 973 F.2d 339, 343 (4th Cir.1992); *United States v. Branch*, 850 F.2d 1080, 1082 (5th Cir.1988), *cert. denied*, 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 806 (1989); *United States v. Risken*, 788 F.2d 1361, 1367–68 (8th Cir.), *cert. denied*, 479 U.S. 923, 107 S.Ct. 329, 93 L.Ed.2d 302 (1986); *United States v. Rovetuso*, 768 F.2d 809, 824 (7th Cir.1985), *cert. denied*, 474 U.S. 1076, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986). The compelling weight of authority is in favor of holding that the residual clause § 1503 was not amended in 1982 and remains broad enough to cover proscribed acts against a witness.

The defendants alternatively argue that count thirty-two fails to allege the essential elements to a charge of obstruction of justice under § 1503. Specifically, the indictment does not allege that the defendants had knowledge or notice of the pending judicial proceeding, does not allege to whom Garcia was to "falsely state and testify," and does not allege that the defendants knew Garcia

was a witness. The government responds with a single sentence, "[m]oreover, the indictment informs the defendants that the government intends to prove that the obstruction was in 'a federal grand jury investigation in the District of Kansas' and that the defendants have knowledge of that fact in connection with the action undertaken by the defendants."

■ As previously stated, an indictment is sufficient when it contains the elements of the offense charged, apprises the defendant of what charges he must defend against, and affords protection from being placed in jeopardy twice for the same offense. *United States v. Walker* 947 F.2d 1439, 1441 (10th Cir.1991). The sufficiency of an indictment is judged "by practical rather than technical considerations." *Dunn*, 841 F.2d at 1029. "'An indictment should be read in its entirety, construed according to common sense and interpreted to include facts which are necessarily implied'" by the specific allegations. *United States v. Phillips*, 869 F.2d 1361, 1364 (10th Cir.1988) (quoting *United States v. Martin*, 783 F.2d 1449, 1452 (9th Cir.1986)), *cert. denied*, 490 U.S. 1069, 109 S.Ct. 2074, 104 L.Ed.2d 638 (1989). An indictment is generally sufficient when it "set[s] forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *Hamling v. United States* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1882)). "[T]he failure of an indictment to allege all essential elements of an offense is a jurisdictional defect requiring dismissal." *United States v. Brown*, 995 F.2d 1493, 1503 (10th Cir.), *cert. denied*, ___ U.S. ___, 114 S.Ct. 353, 126 L.Ed.2d 317 (1993). The requirement to charge all elements "'derives from the Fifth Amendment, which requires that the *grand jury* have considered and found all elements to be present.'" *Id.* (quoting *United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir.1988)).

■ The elements to a residual clause violation of § 1503 are: "'(1) there must be a

pending judicial proceeding; (2) the defendant must have knowledge or notice of the pending proceeding; and (3) the defendant must have acted corruptly with specific intent to obstruct or impede the proceeding in its due administration of justice.' " *United States v. Wood,* 6 F.3d 692, 695 (10th Cir. 1993) (quoting *United States v. Williams,* 874 F.2d 968, 977 (5th Cir.1989)). For purposes of § 1503, a grand jury investigation is a pending judicial proceeding. *United States v. Wood,* 958 F.2d 963, 975 (10th Cir.1992). Count thirty-two alleges a federal grand jury investigation in the District of Kansas. In the defendants' judgment, count thirty-two, however, does not contain the second element, because it does not allege in precise terms that they knew or had notice of the pending grand jury investigation. The case law does not support such an exacting standard. The indictment need not spell out that the defendants knew or were aware of the proceeding. *United States v. Schwimmer,* 649 F.Supp. 544, 548 (E.D.N.Y.1986). By alleging that the defendants corruptly endeavored to obstruct a grand jury investigation, count thirty-two sufficiently "encompasses knowledge of a judicial proceeding and intent to impede it." *Id.; see United States v. Haas,* 583 F.2d 216, 220 (5th Cir. 1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979). Count thirty-two further alleges that the defendants instructed Garcia to testify falsely. The only pending judicial proceeding specified in count thirty-two and before which Garcia could testify in August of 1993 was the federal grand jury investigation. Therefore, the specific allegations of count thirty-two necessarily imply that the defendants knew or had notice of the grand jury investigation. *See Pettibone v. United States,* 148 U.S. 197, 206, 13 S.Ct. 542, 546, 37 L.Ed. 419 (1893) (Under the predecessor of § 1503, the Supreme Court held that the indictment "must charge knowledge or notice, or set out facts that show knowledge or notice...."); *Cf. United States v. Abrams,* 543 F.Supp. 1184, 1188 (S.D.N.Y.1982). Count thirty-two plainly informs the defendants that the alleged obstruction of justice charge relates to their advising Louis Garcia to testify falsely before the grand jury. The test is not whether the

indictment could have been better framed or worded, for it could have been here, but whether it satisfies minimal constitutional standards. *See United States v. Perkins,* 748 F.2d 1519, 1524 (11th Cir.1984). Obstruction of justice charges do not require greater specificity than other charges. *United States v. McGee,* 798 F.Supp. 53, 59 (D.Mass. 1992). Count thirty-two meets the minimal constitutional standards.

7. *Garcia cannot be both an employee of an independent agency of the United States pursuant to 18 U.S.C. § 209 and a public official for purposes of 18 U.S.C. § 201.*

The definition of a public official under the unlawful supplementation of a federal employee's salary statute, 18 U.S.C. § 209, includes "an officer or employee ... of any independent agency of the United States." On the other hand, the bribery statute at 18 U.S.C. § 201(a)(1) defines a "public official," as "an officer or employee or person acting for on or behalf of the United States, or *any* ... agency ... of Government thereof, ... in any official function, under or by authority of *any* such department, agency, or branch of Government...." (emphasis added). Because the Postal Service is an *independent* agency of the United States, the defendants contend that Garcia is an employee for purposes of § 209 but not § 201(a)(1). The court considers this a cramped reading of the statutes.

 With the 1962 revision of the bribery statutes, Congress continued its tradition of broadly drafting the jurisdictional language in order to accommodate the expected growth and diversification of the Federal Government. *Dixson v. United States* 465 U.S. 482, 491–96, 104 S.Ct. 1172, 1177–80, 79 L.Ed.2d 458 (1984). Persons are public officials for purposes of § 201 if they occupy "a position of public trust with official federal responsibilities." *Id.* at 496, 104 S.Ct. at 1180. Based on this Supreme Court precedent, this court entirely agrees with the Second Circuit that Postal Service employees are public officials holding positions of trust with official federal responsibilities. *United States v. Gelb,* 881 F.2d 1155, 1163 (2nd Cir.),

*cert. denied,* 493 U.S. 994, 110 S.Ct. 544, 107 L.Ed.2d 541 (1989). The defendants' motion to dismiss on this ground is denied.

## JOINT MOTION FOR DISCOVERY OF FAVORABLE AND IMPEACHING EVIDENCE (Dk. 30).

Citing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), and Rule 16 of the Federal Rules of Criminal Procedure, the defendants ask for an order requiring the government to disclose favorable and impeachment information. The government opposes the motion saying it has provided all known information required by *Brady, Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and Rule 16. The government further acknowledges its continuing duty under this law to provide such information. Before going to the specific requests, the court will lay out the controlling law.

 "There is no general constitutional right to discovery in a criminal case and *Brady* did not create one." *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). *Brady* did impose a duty on the prosecution to disclose evidence in its possession that is both exculpatory and material either to guilt or punishment. 373 U.S. at 87, 83 S.Ct. at 1196. The due process clause sets the parameters for *Brady:*

> The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial....

*United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 3379–80, 87 L.Ed.2d 481 (1985) (footnotes omitted). In short, "it is a rule of fairness and the constitutionally minimal prosecutorial obligation." *United States v. George,* 778 F.2d 556, 560 (10th Cir.1985).

 The government's obligation to disclose arises when the requested information is both favorable to the defendant and material. The information must be favorable to the point of being expressly exculpatory:

> If a statement does not contain any expressly exculpatory material, the Government need not produce that statement to the defense. To hold otherwise would impose an insuperable burden on the Government to determine what facially non-exculpatory evidence might possibly be favorable to the accused by inferential reasoning.

*United States v. Comosona,* 848 F.2d 1110, 1115 (10th Cir.1988); *see United States v. Bagley,* 473 U.S. at 676 n. 7, 105 S.Ct. at 3380 n. 7. Exculpatory evidence "goes to the heart of the defendant's guilt or innocence." *United States v. Starusko,* 729 F.2d 256, 260 (3rd Cir.1984) (citation omitted). Information is not exculpatory merely because it is not inculpatory. *United States v. Kennedy,* 819 F.Supp. 1510, 1519 (D.Colo.), *aff'd,* 994 F.2d 747 (10th Cir.1993). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383. Quite simply, "the constitution does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the Government....'" *United States v. Mayes,* 917 F.2d 457, 461 (10th Cir.1990) (quoting *Jencks v. United States,* 353 U.S. 657, 667, 77 S.Ct. 1007, 1012, 1 L.Ed.2d 1103 (1957)), *cert. denied,* 498 U.S. 1125, 111 S.Ct. 1087, 112 L.Ed.2d 1192 (1991).

 Impeachment evidence falls within the *Brady* rule when the reliability of a given witness may be determinative of the defendant's guilt or innocence. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). "'Impeachment evidence merits the same constitutional treatment as exculpatory evidence.'" *United States v. Abello–Silva,* 948 F.2d 1168, 1179

(10th Cir.1991) (quoting *Bowen v. Maynard*, 799 F.2d 593, 610 (10th Cir.), *cert. denied*, 479 U.S. 962, 107 S.Ct. 458, 93 L.Ed.2d 404 (1986)), *cert. denied*, —— U.S. ——, 113 S.Ct. 107, 121 L.Ed.2d 65 (1992). Impeachment evidence is material if it tends to undermine the credibility of an important government witness. *United States v. Alex*, 791 F.Supp. at 730.

A defendant's allegation that the requested information might be material does not entitle him to an unsupervised search of the government's files. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987). The burden is with the defendant to prove the materiality of the requested, undisclosed information. *United States v. Hudson*, 813 F.Supp. 1482, 1490 (D.Kan.1993); *United States v. Burger*, 773 F.Supp. 1419, 1426 (D.Kan.1991), *aff'd*, 968 F.2d 21 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1382, 122 L.Ed.2d 758 (1993). "To require disclosure, the defendant must establish that the evidence sought exists, ..., that it is both favorable and material, ..., and that it has not already been provided." *Kennedy*, 819 F.Supp. at 1518 (citations omitted). Because the defendants often are unable to "know with certainty what information the government has," courts should strongly encourage liberal discovery. *United States v. Jensen*, 608 F.2d 1349, 1357 (10th Cir.1979). In the same vein, the government is to construe liberally the discovery requests and resolve all doubts in favor of disclosure. *United States v. Diggs*, 801 F.Supp. 441, 447 (D.Kan.1992), *aff'd*, 8 F.3d 1520 (10th Cir.1993).

*Brady* requires the government to disclose only the material exculpatory evidence that is in its possession. "Possession" for *Brady* purposes is determined by several governing principles. "It is well settled that there is no 'affirmative duty upon the government to take action to discover information which it does not possess.'" *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir.1991) (quoting *United States v. Beaver*, 524 F.2d 963, 966 (5th Cir.1975), *cert. denied*, 425 U.S. 905, 96 S.Ct. 1498, 47 L.Ed.2d 756 (1976)); *see United States v. Kraemer*, 810 F.2d 173, 178 (8th Cir.1987) (No requirement "to search out exculpatory evidence for the defendant"). At the same time, what the government possesses is not determined only from what the prosecution has in its file. "[A] prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case." *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir.1984). "If a federal prosecutor has knowledge of and access to exculpatory information as defined in *Brady* ..., then the prosecutor must disclose it to the defense." *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir.), *cert. denied*, 493 U.S. 858, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989). A duty to search files maintained by governmental agencies closely aligned with the prosecution may be triggered when there is some reasonable prospect or notice of finding exculpatory evidence. *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C.Cir.1992). Mere possibilities or utter speculation will not give rise to this duty to search. *Id.* at 1503–04. "As the burden of the proposed examination rises, clearly the likelihood of a pay-off must also rise before the government can be put to the effort." *Id.* at 1504 (citation omitted).

Rule 16(a)(1)(C) provides in pertinent part:

> Upon request of the defendant the government shall permit the defendant to inspect and copy ... books, papers, documents, ... tangible objects, ... which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

The defendant cannot rely on conclusory allegations or on a general description of the requested information, but must make a prima facie showing of materiality to obtain the requested information. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir.1990); *see United States v. Phillip*, 948 F.2d 241, 250 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1994, 118 L.Ed.2d 590 (1992). To be "material" for purposes of this rule, the evidence must have "more than ... [an] abstract logical relationship to the issues." *United States v. Ross*, 511 F.2d 757, 762 (5th Cir.) (citation omitted), *cert. denied*, 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975).

"There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Id.* at 763. The materiality requirement typically " 'is not a heavy burden,' rather, evidence is material as long as there is a strong indication that . . . [the evidence] will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.' " *United States v. Lloyd,* 992 F.2d 348, 351 (D.C.Cir.1993) (quoting *United States v. George,* 786 F.Supp. 56, 58 (D.D.C.1992)).[5] Stated simply, the defendant must come forth with facts tending to show "that the Government is in possession of information helpful to the defense." *Mandel,* 914 F.2d at 1219 (citation omitted).

██ Rule 16(a)(1)(C) " 'triggers the government's disclosure obligation only with respect to documents within the federal government's actual possession, custody, or control.' " *United States v. Dominguez–Villa,* 954 F.2d 562, 566 ((9th Cir.1992) (quoting *United States v. Gatto,* 763 F.2d 1040, 1048 (9th Cir.1985)). A document is within the possession of the government if the prosecutor has knowledge of it and access to it, and a "prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan,* 868 F.2d at 1036; *see United States v. Jensen,* 608 F.2d at 1357 ("There is some duty of inter-agency discovery, which normally can be discharged 'by searching, or requesting that search be made, of the files of administrative or police investigations of the defendant, in addition to his [prosecutor's] own files.' " (quoting 8 *Moore's Federal Practice* ¶ 16.05, at 16–65 (2d ed. 1979 rev.)); *United States v. NYNEX Corp.,* 781 F.Supp. 19, 25 (D.D.C.1991) (prosecution must produce materials possessed by other federal agencies allied with the prosecution); *But see United States v. Reed,* No. 88–11049–01/02, 1989 WL 168096, 1989 U.S.Dist. LEXIS 16216 (D.Kan.

Dec. 15, 1989) (Judge Theis rejected the knowledge prong of the *Bryan* test). To impose on a prosecutor the duty to scan the files of every federal agency " 'would not only wreak havoc but would give the defense access to information not readily available to the prosecution.' " *Bryan,* 868 F.2d at 1036 (quoting *United States v. Robertson,* 634 F.Supp. 1020, 1025 (E.D.Cal.1986), *aff'd,* 815 F.2d 714 (9th Cir.), *cert. denied* (1987)).

A. *Louis Garcia's 1990, 1991 and 1992 federal income tax returns, including all schedules, 1099's and W2's.*

██ The defendants believe this information is material on alternative grounds. If Garcia reported his income from the alleged consulting arrangement, then it reflects his belief that the income was lawful. If Garcia failed to report the income, then the information is relevant in showing Garcia's bias since the government has agreed to bring no further charges resulting from his activities as charged. The government considers the defendants' arguments to be nothing more than speculation. In addition, the government denies it has access to this information and refers to 26 U.S.C. § 6103. The defendants do not reply to the government's denial of access.

The defendants have carried their burden of showing materiality under both *Brady* and Rule 16. Evidence that the government could have prosecuted Garcia also on tax charges and has agreed not to, in exchange for his cooperation, tends to show bias and prejudice. If the prosecution possesses this tax information, then it shall produce it. *See United States v. Pottorf,* 769 F.Supp. 1176, 1181–82 (D.Kan.1991); *United States v. Dawes,* No. 88–10002–01, slip op. at 4–9, 1990 WL 171074 (D.Kan. Oct. 15, 1990)

██ The court does not order the prosecution to search out this information if it is not in their actual possession. The court does not believe the government has ready access to this information as to require production under Rule 16 or *Brady.* What the defendants request here qualifies as the tax returns and return information to which con-

---

5. As has been observed, materiality is a standard that may vary with the particular relevance of the requested information, the burden in producing it, the national or privacy interests surround-

ing it, and its availability from other sources. *United States v. George,* 786 F.Supp. 56, 58 (D.D.C.1992).

fidentiality is statutorily imposed. 26 U.S.C. § 6103(a), (b). Since this is a judicial proceeding unrelated to tax administration, the provisions for disclosure at 26 U.S.C. § 6103(i) are applicable. The defendants have not shown that the statutory grounds exist on which this information properly could be sought by the government and ordered by the court. "When Congress chooses to speak with such specificity, courts must heed its language." *United States v. Mangan,* 575 F.2d 32, 39 (2nd Cir.) (citation omitted), *cert. denied,* 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978). Under the statutory scheme, the court cannot order disclosure of information under § 6103(i)(4)(A), unless the prosecution acquires it upon a proper application and court order. *United States v. Recognition Equipment Inc.,* 720 F.Supp. 13, 14 (D.D.C.1989); *see United States v. Lochmondy,* 890 F.2d 817, 824 (6th Cir.1989). As for *Brady,* its constitutional mandate comes ahead of most statutory limitations on disclosure. *See Pennsylvania v. Ritchie* 480 U.S. at 59, 107 S.Ct. at 1002 (*Brady* duty on prosecution not trumped by state statute preventing disclosure of child abuse files); *United States v. Robertson,* 634 F.Supp. at 1028 n. 10 (A conflict between *Brady* and statutory restrictions would have to be resolved in favor of production). However, the Internal Revenue Service or its criminal investigation section is not closely aligned or connected with the Department of Justice, *Robertson,* 634 F.Supp. at 1025 n. 7, or with this particular prosecution. *See United States v. Lochmondy,* 890 F.2d at 823–24. For these reasons, the court does not compel the prosecution to produce this information unless it is already in their actual possession.

2. *United States Postal Service personnel file of Louis Garcia, including travel vouchers, travel records, and requests for leave.*

■ According to the defendants, these records would corroborate their defense that Louis Garcia was paid to perform training and consulting services for Parkview. The government has produced some of these documents showing that Louis Garcia took annual leave when he traveled to Parkview. The government opposes this request as speculative and as prohibited by Postal Service regulations.[6]

There is no dispute that Louis Garcia is the central witness in the government's case. Documenting his actions and travels, undoubtedly, will be a large part of the evidence presented by both sides. Any records reflecting the same are plainly material to the case. Moreover, the reliability of Garcia's testimony may well be determinative of the defendants' guilt or innocence. The Postal Service is closely aligned with the prosecutor in the prosecution of this case. *See, United States v. Deutsch,* 475 F.2d 55, 57 (5th Cir.1973), *overruled on other grounds, United States v. Henry,* 749 F.2d 203, 206 (5th Cir.1984). The court directs the prosecution to produce all travel vouchers submitted by Louis Garcia, all records reflecting Louis Garcia's travel, and all requests for leave submitted by Louis Garcia. These documents need cover only the period between February of 1990 and September of 1993. As for Garcia's entire personnel file, the court directs the prosecutor to review it and produce all material impeachment and exculpatory evidence from it. If the prosecution is uncertain about the materiality of some information in the personnel file or is confronted with difficult privacy issues, then it should submit the information to the court for an in camera inspection and evaluation.

3. *Postal Service documents and/or any other documents maintained by the federal government which pertain to or identify: (a) postal employees and/or family members who worked in the region for which Louis Garcia was an employee assistance counselor and who received in-patient treatment from February of 1990 through September of 1993, and the name of the treating facility; and (b) postal employees who were assisted by Louis Garcia in securing in-patient treatment any time between February of 1990 and September of 1993, and the name of the treating facility.*

■ The defendants believe these documents are relevant in establishing the total

---

6. The prosecution cites to regulations without furnishing the court with copies of them. The court was unable to find these cited regulations in the Code of Federal Regulations.

number of patients that Garcia referred to other hospitals and in leading to evidence concerning agreements that Garcia may have had with other health care providers. Such evidence, in the defendants' opinion, would dispute the government's case that there was an agreement for Garcia to send three patients each month to Parkview in exchange for $3,000. The defendants also consider such evidence relevant in showing that the final decision on where a patient went for treatment was the patient's and not Garcia's. The government opposes the request because such records are confidential and irrelevant.

The identity of any Postal Service employee who received in-patient treatment is a matter of utmost confidentiality. The defendants say they are willing to enter into any reasonable protective order that the government or the court can devise to limit the use of these records and to protect the identity of the employees. The court does not believe the defendants have sufficient need for this evidence to justify the significant efforts expended in devising and accomplishing such protective measures or to warrant the substantial risks involved in attempting the same.[7] That patients were responsible for choosing the treatment facility and that Garcia counseled some patients who did not choose Parkview would not significantly alter the quantum of proof. Such evidence does not bear directly on the essential elements of any charges brought here. The evidence, at best, would be not inculpatory. As for corroborating their defense, the requested information would not show that Garcia performed consulting or training services for Parkview. The court finds that the materiality, if any, of the requested information does not justify the burden and risks associated with disclosing it.

4. *The FBI 302s, field notes or drafts of statements regarding statements by Louis Garcia and a complete copy of Garcia's November, 1993 statement to law enforcement.*

■ Defense counsel informed the court at oral argument that the dispute over the

November, 1993 statement was being or had been resolved. On the remaining documents, the government is correct these matters are not subject to disclosure under Rule 16. Fed.R.Crim.P. 16(a)(2). This provision, however, does not relieve the prosecution of its duty to disclose under *Brady* and *Giglio* exculpatory or impeachment evidence that is material. The prosecution should review those documents and determine if they contain material impeachment evidence.

5. *Contracts, agreements or memoranda of understanding between Louis Garcia and providers of either in-patient or out-patient treatment.*

■ The government does not directly respond to this request. If it possesses any such documents, the government shall disclose them.

6. *Postal Service's internal investigation of Louis Garcia including: (a) statements by Louis Garcia and all other witnesses; (b) results, recommendations or action taken against Louis Garcia; and (c) documents reflecting dates of and reasons for demotion, disciplinary action and termination of Louis Garcia.*

[70] The court agrees with the defendants that such evidence could have impeachment value. The defendants have come forth with sufficient facts to show the materiality of the evidence they seek and to take their request outside the realm of sheer speculation. The prosecution shall review such files and determine if there is any material impeachment evidence in them.

7. *Louis Garcia's medical records which reflect assessment, care or treatment for alcohol or drug use from January of 1990 through the present; and United States Armed Services documents regarding Louis Garcia's disability.*

■ The prosecution says it does not possess any such documents and does not have

---

7. The court does not know if the Postal Service even maintains such records. As for records kept by another federal agency, the court does

not know what agency that could be or whether that agency is closely connected to this prosecution.

access to them. The Defense Department is not a federal agency closely connected to the Department of Justice or to this prosecution. Consequently, the government has no duty to search out these medical records. The court denies the defendants' request.

8. *Written evidence of any negotiations for or agreements to grant formal or informal immunity, or not to prosecute, or to extend any other benefit to any potential witness.*

The defendants in their reply brief acknowledge receipt of this evidence and remind the government of its continuing duty to produce the same. This request is now moot.

9. *Correspondence or notes of communication with state or federal agencies or law enforcement representatives done in an effort to obtain a benefit for Louis Garcia including, but not limited to, efforts to avoid additional criminal charges or civil penalties or preservation of rights or benefits of a Postal Service employee.*

10. *Any and all drafts or versions of plea agreements forwarded to Louis Garcia or his attorney. Correspondence between law enforcement authorities and Louis Garcia or his attorney regarding his cooperation, plea agreement or proffer.*

■ Such matters fall within the nondisclosure provision of Rule 16(a)(2). This request seems to be a fishing expedition since the defendants have Garcia's plea agreement and a transcript of his plea. The court denies the request.

11. *Any written record regarding criminal convictions of Louis Garcia.*

■ The government has provided the defendants with a printout for Louis Garcia from the National Crime Information Center ("NCIC"). The defendants complain that the NCIC is often inaccurate and ask the government to make a more thorough investigation. The defendants do not cite any authority in support of their general assertion that NCIC

checks are often inaccurate or in support of their request that the government must provide more than a NCIC check or rap sheet. The court denies the defendants' request for the government to undertake additional discovery of Garcia's criminal history. *See United States v. Audelo–Sanchez,* 923 F.2d 129, 130 (9th Cir.1990).

**DEFENDANT JACKSON'S MOTION TO STRIKE (Dk. 32).**

The defendant seeks to strike from the indictment references to the Postal Service's code of ethical conduct, to an overt act that Garcia referred forty-three patients on which Parkview realized $609,198.90 in revenue from insurance providers, and to the allegation that the conspiracy continued until the return of the indictment. The government opposes the motion and denies that the challenged references are surplusage.

■ Rule 7(d) of the Federal Rules of Criminal Procedure provides that the court on a defendant's motion "may strike surplusage from the indictment." Rule 7(d), as worded, provides broad judicial discretion, but, as construed, it does not favor the striking of surplusage. *United States v. Poindexter* 725 F.Supp. 13, 35 (D.D.C.1989). Courts strike language only if it is both clearly irrelevant to the charges and inflammatory or prejudicial to the defendant. *United States v. Collins,* 920 F.2d 619, 631 (10th Cir.1990), *cert. denied,* 500 U.S. 920, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991); *United States v. Huppert,* 917 F.2d 507, 511 (11th Cir.1990); *United States v. Hill,* 799 F.Supp. 86, 88 (D.Kan.1992); 1 Charles A. Wright, *Federal Practice and Procedure* § 127 at 426 (1982). This is an exacting standard that is rarely met. *Hill,* 799 F.Supp. at 88; *United States v. Eisenberg,* 773 F.Supp. 662, 700 (D.N.J.1991). Rule 7(d) is intended "to protect the defendant from prejudicial allegations of irrelevant or immaterial facts." *Federal Practice and Procedure* § 127 at 425.

■ The defendant Jackson argues that allegations referring to the Postal Service's code of ethical conduct are not relevant to him. This reference is prejudicial, according to Jackson, because the jury may think that

he is subject to the code and that a violation of it constitutes criminal conduct. The government explains that this allegation reveals a reason for why the defendants and Garcia structured and concealed the arrangement. The court considers the allegation primarily helpful in understanding the Postal Service's expectation of loyal services from its employees. To some extent, it also reveals a motive for the furtive actions of the defendants and Garcia. As for prejudice, the allegation specifically and plainly names Garcia as the only employee subject to this ethical code. There is no reasonable likelihood that the jury will read it any other way.

 At paragraph 8(d), the indictment reads: "From November 1990 to December 1991 GARCIA referred 43 patients to PARKVIEW for which the hospital realized $609,-198.90 in revenue from various insurance company providers." The defendant Jackson considers this allegation to be immaterial and intended only to inflame the jury. The government responds that the allegation addresses the issue of intent and motive. " 'If the language is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be.' " *Hill* 799 F.Supp. at 88–89 (quoting *United States v. Climatemp Inc.*, 482 F.Supp. 376, 391 (N.D.Ill.1979), *aff'd sub nom., United States v. Reliable Sheet Metal Works, Inc.*, 705 F.2d 461 (7th Cir.), *cert. denied,* 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983)). The court cannot rule out the admissibility of this evidence as going to the defendants' intent or motive assuming a proper foundation is laid. *See Eisenberg,* 773 F.Supp. at 701. Since it alleges that Parkview, not the defendants, realized this revenue, the prejudice to the defendants from this allegation is minimal.

 Count one at paragraph seven alleges:

Commencing at least as early as November, 1990, the exact date being unknown to the grand jury, and *continuing until the return of this indictment,* in the District of Kansas, and elsewhere, the defendants, MARK M. JACKSON and ROBERT MARTINEZ, JR. did combine, conspire, confederate and agree to defraud the Unit-

ed States of America by depriving it of the faithful and honest services of its employee LOUIS ALBERT GARCIA.

The defendant Jackson seeks to strike the italicized language arguing the central purpose of the alleged conspiracy was accomplished with the last payment to Garcia in January of 1992. In the alternative, the defendant contends the outside date of the conspiracy is July of 1992 when the defendants left Parkview. The defendant Jackson believes this allegation prejudices him in allowing the jury to think that the conspiracy continued until the government stopped it. The government, in conclusory terms, argues the allegation is not prejudicial nor critical or material. The court does not believe this to be the appropriate time to decide what evidence the government can admit or what facts the government can prove. This allegation is not critical to the elements of the charged conspiracy:

Where time is not an essential element of the offense, a defect in the allegation of time is one of form only. (citations omitted). "The [time] allegation is not regarded as going to an essential element of the crime, and, within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient." 1 Wright, Fed.Prac. & Proc. § 125, p. 247 (1969).

*United States v. Arge,* 418 F.2d 721, 724 (10th Cir.1969). Still, the allegation reflects what the grand jury found, and for that reason the court believes it should not be changed at this time. Any prejudice from this allegation is minimal. The jury will decide whether a conspiracy existed from the evidence, and the court will instruct the jury on the indictment's limited role.

## JOINT MOTION FOR ADDITIONAL PRODUCTION OF JENCKS ACT MATERIAL (Dk. 47).

The government has provided the defendants with partial grand jury transcripts of the testimony of five witnesses that the government intends to call at trial. The defendants argue that the government asked these witnesses during the grand jury proceeding to verify or confirm statements that they had

previously provided. The defendants move for an order requiring the government to produce these prior statements under the Jencks Act, 18 U.S.C. § 3500. The defendants request full grand jury transcripts for these witnesses, and they oppose the government redacting any portion of the grand jury transcripts without a court order allowing the same. In response, the government explains the redactions concern matters affecting a current and continuing investigation of other alleged criminal violations and of other possible referral sources to Parkview. The government opposes production of investigatory reports at this time arguing that the reports must relate to matters addressed in direct examination.

The Jencks Act directs the district court to order the government to produce, upon defense motion, any statement of the witness which relates to the subject matter to which the witness has testified during direct examination. 18 U.S.C. § 3500(b); *see United States v. Vaccaro,* 816 F.2d 443, 452 (9th Cir.), *cert. denied,* 484 U.S. 914, 108 S.Ct. 262, 98 L.Ed.2d 220 (1987). The Jencks Act provides a three-part definition of "statement":

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e).

 "Interview notes could be 'statements' under the Act [18 U.S.C. § 3500(e)(2) ] if they are substantially verbatim" recitals of a witness's oral statement and are recorded contemporaneously with the interview. *United States v. Smith* 984 F.2d 1084, 1086 (10th Cir.) (citation omitted), *cert. denied,* — U.S. —, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993); *see United States v. Rewald,* 889 F.2d 836, 867 (9th Cir.1989), *modified on other grounds,* 902 F.2d 18 (9th Cir.), *cert. denied,* 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990). On the other hand, reports that embody only the agent's " 'epitomization, interpretation, or impression of an interview are not producible....' " *Rewald,* 889 F.2d at 867 (quoting *Ogden v. United States,* 303 F.2d 724, 732 (9th Cir. 1962)). "[T]he task of characterizing the report is for the court, not the government." *Rewald,* 889 F.2d at 867 (citations omitted). Once the defendant makes a prima showing that a statement of the witness exists, the court cannot deny the defendant's request without a hearing or in camera review of the purported statement. *Smith,* 984 F.2d at 1086.

 Under 18 U.S.C. § 3500(e)(1), interview notes or reports are also discoverable if they contain a written statement signed, adopted or approved by the government witness. *United States v. Morris,* 957 F.2d 1391, 1401 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 380, 121 L.Ed.2d 290 (1992). A statement within a report is adopted by the witness if the interview notes are read back to and verified, approved, or acknowledged as true by the witness and the report summarizes the notes without material variation. *United States v. Williams,* 962 F.2d 1218, 1224 (6th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992); *see United States v. Boshell,* 952 F.2d 1101, 1104–05 (9th Cir.1991). In short, the witness must have read the entire statement and formally approved it. *United States v. Jackson,* 978 F.2d 903, 909 (5th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2429, 124 L.Ed.2d 649 (1993). When the defendant claims the statements are producible under Jencks Act, the court must examine in camera the purported statements. *Morris,* 957 F.2d at 1401. The court must focus on " 'whether the statement can fairly be deemed to reflect *fully and without distortion the witness's own words.*' " *Id.* (quoting *United States v. Allen,* 798 F.2d 985, 994 (7th Cir.1986)). "[T]he materials should not only reflect the witness' own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context." *United States v. Bobadilla–Lopez,* 954 F.2d 519, 522 (9th

Cir.1992), *cert. denied,* ―― U.S. ――, 113 S.Ct. 987, 122 L.Ed.2d 139 (1993).

 The government must submit for in camera inspection the postal inspectors' notes taken during and the reports made from the interviews of James Leiker, Pam Dieter, Cheryl Bozarth, Beverly Rice, Teresa Markowitz and Doug Montgomery. The court orders the government to submit the same ten days prior to trial along with the unredacted grand jury testimony of these five witness. The court will inspect the notes and reports and determine if the witnesses adopted the statements for purposes of the Jencks Act. If producible, the notes or report will be furnished to defendants only after direct examination unless the government agrees to an earlier disclosure. The court also will inspect in camera the grand jury testimony of these witnesses and determine if the government's proposed redactions are proper. The court will disclose any improper redactions after direct examination unless the government agrees to an earlier disclosure.

IT IS THEREFORE ORDERED that the defendant Robert Martinez, Jr.'s motion to sever (Dk. 24) and the defendant Mark M. Jackson's motion to sever (Dk. 34) are denied;

IT IS FURTHER ORDERED that the defendants' joint motion to compel notice and disclosure of Rule 404(b) evidence (Dk. 26) is granted;

IT IS FURTHER ORDERED that the defendants' joint motion to dismiss (Dk. 28) is denied;

IT IS FURTHER ORDERED that the defendants' joint motion for discovery of favorable and impeaching evidence (Dk. 30) is granted in part and denied in part;

IT IS FURTHER ORDERED that the defendant Mark M. Jackson's motion to strike (Dk. 32) language from the indictment is denied;

IT IS FURTHER ORDERED that the defendants' joint motion for additional production of Jencks Act material (Dk. 47) is granted to the extent that the court will inspect in camera the disputed materials and decide if additional production is required.