**UNITED STATES of America, Plaintiff,**

v.

**Scott UPHOFF, Defendant.**

**No. 95–20063–01–JWL.**

United States District Court,
D. Kansas.

Nov. 6, 1995.

---

Mark J. Sachse, Kansas City, KS, for Scott Uphoff.

Tanya J. Treadway, Office of United States Attorney, Kansas City, KS, for U.S.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Defendant Scott Uphoff has been charged with violating 18 U.S.C. § 287 by submitting a false claim to Medicare. Presently before the court is defendant's motion for discovery (Doc. # 11). After a discovery hearing on October 16, 1995, the court ordered the government to turn over certain documents that Manor Care, Inc., defendant's former employer, produced in response to grand jury subpoenas. By this directive, which the court reaffirms and incorporates into this order, the court granted defendant's motion in part. For the reasons set forth below, the remainder of defendant's motion is denied.

### Discussion

In addition to the documents produced by Manor Care, defendant seeks discovery of two categories of information: first, evidence of plea agreements and; second, evidence regarding the corporate practice of Manor Care in documenting Medicare charges. Defendant claims that *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and Federal Rule of Criminal Procedure 16, authorize his discovery requests. The government states that it has fully complied with its discovery obligations.

Under *Brady* and *Giglio*, the government must turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987). The defendant has the burden to prove both that the evidence is favorable and material.[1] Furthermore, "[u]nless defense counsel becomes aware that [ ] exculpatory evidence [is being] withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." *Ritchie*, 480 U.S. at 59, 107 S.Ct. at 1002 (citation omitted). *Brady* does not authorize a fishing expedition through the government's files whenever it is conceivable that evidence beneficial to a defendant may be discovered. *United States v. Phillips*, 854 F.2d 273, 278 (7th Cir.1988); *United States v. Scott*, 555

---

1. Due to the posture in which it normally receives cases, the Tenth Circuit typically speaks of the defendant's burden of proof on appeal. That is, the defendant must establish, *inter alia*, that the evidence was favorable and was material in order to prove a *Brady* violation occurred at trial. *E.g., Rushing v. Champion*, No. 94–5205, 1995 WL 247454, at *1 n. 3 (10th Cir. Apr. 27, 1995) (citation omitted), *cert. denied*, —— U.S. ——, 116 S.Ct. 242, 133 L.Ed.2d 169 (1995); *Smith v. Secretary of New Mexico Dep't of Corrections*, 50 F.3d 801, 824 (10th Cir.) (citations omitted), *cert.*

denied sub nom. *Mondragon v. Smith*, —— U.S. ——, 116 S.Ct. 272, 133 U.S. 193 (1995). This court has consistently held that a defendant also has the burden to prove evidence is favorable and material before *Brady* requires disclosure at the trial stage. *E.g., United States v. Ailsworth*, No. 94–40017, 1994 WL 539347, at *18 (D.Kan. Aug. 24, 1994) (citation omitted); *United States v. Jackson*, 850 F.Supp. 1481, 1502 (D.Kan.1994) (citation omitted); *United States v. Marker*, No. 94–40002–01–SAC, 1994 WL 192018, at *4 (D.Kan. Apr. 15, 1994) (citation omitted).

F.2d 522, 528 (5th Cir.), *cert. denied,* 434 U.S. 985, 98 S.Ct. 610, 54 L.Ed.2d 478 (1977).

■ Turning to defendant's first discovery category, the government submits that it "has offered no plea agreements, nonprosecution agreements, immunity, or benefits to anyone during the course of its investigation" into this matter. Defendant has presented neither evidence nor argument to the contrary. Consequently, no discovery will be ordered for this category except to remind the government that the obligation to disclose *Brady* and *Giglio* material is a continuing one. Should the government make any such agreement, which clearly would be impeachment evidence covered by *Giglio,* it shall be disclosed to defendant immediately.[2]

As to the second discovery category, the government states that its investigation encompassed both the nursing home administered by defendant in Wichita and another Manor Care nursing home in Overland Park, Kansas. Transcript of Discovery Hearing (Transcript) at 6. Defendant believes that evidence from the government's investigation into nursing homes other than the Wichita facility may be exculpatory. Defendant's theory turns on the three paragraphs in the indictment describing Manor Care's procedure for billing Medicare. Those three paragraphs read as follows:

8. Manor Care Nursing Home provided inpatient services for both Medicare and non-Medicare patients. Nurses and other skilled medical professionals provided services to both Medicare and non-Medicare patients, and not exclusively to one group of patients. To document when nursing and other skilled services were provided to Medicare patients, as opposed to non-Medicare patients, the medical personnel were to complete "Float Reports".

9. From the Float Reports, the clerical staff were to record costs of providing medical services to Medicare patients. These costs were essentially the payroll costs for the hourly work provided by the various medical personnel, such as Registered Nurses ("R.N."), as needed Registered Nurses ("P.R.N."), and others.

10. The services provided to Medicare patients were to be recorded as "certified hours." These records were then forwarded to Manor Care, Inc., in Naperville, Illinois, or in Silverspring, Maryland, for inclusion in the Cost Reports. Manor Care would then submit Cost Reports to the fiscal intermediary, Mutual of Omaha, for the purpose of obtaining reimbursement from Medicare Part A.

Defendant maintains that if the government's investigation revealed Manor Care did not follow the procedure described above in other nursing homes, that evidence would be exculpatory. Defendant argues that if he was attempting to estimate Medicare costs and if the government's investigation revealed that administrators of other Manor Care facilities merely estimated Medicare costs rather than used the procedure in paragraphs 8, 9 and 10, then defendant was following corporate practice and did not have the intent to defraud the government required to violate 18 U.S.C. § 287. Transcript at 12, 16.

The government submits that it possesses no evidence suggesting that other Manor Care facilities estimated Medicare costs. *Id.* at 7, 15. Defendant has made no showing that any such evidence exists. The government, however, must have some evidence regarding the corporate practice of Manor Care in documenting Medicare charges; otherwise, paragraphs 8, 9 and 10 could not appear in the indictment. This information falls within the scope of defendant's discovery request. The question thus becomes whether or not defendant has established that this information is "both favorable to the accused and material to guilt or punishment." *Ritchie,* 480 U.S. at 57, 107 S.Ct. at 1001. If not, *Brady* does not require disclosure.

---

**2.** In neither his papers nor his oral argument did defendant specify the category or categories of his discovery requests for which he believes Rule 16 grants discovery. Rule 16 most directly bears on the documents Manor Care produced to the government pursuant to grand jury subpoenas.

As previously stated, the court already ordered discovery of that material. As to any evidence of plea agreements, since defendant has not demonstrated that any agreement exists, the court need not decide whether or not Rule 16 would authorize discovery.

In the Tenth Circuit, exculpatory and favorable are used interchangeably. *Smith,* 50 F.3d at 827 n. 37. Under defendant's theory, evidence of Manor Care's corporate billing practices is material because it is exculpatory. Therefore, if defendant could prove materiality, he would also establish that the evidence is favorable. The court concludes, however, that defendant has not proven that this information is material. Consequently and because defendant offers no alternate theory, defendant has also failed to establish that the evidence sought would be favorable.

The Supreme Court defined materiality for *Brady* purposes as follows:

> Evidence is material only if there is a reasonable probability that, [were] the evidence [to be] disclosed to the defense, the result of the proceeding would [be] different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.

*Ritchie,* 480 U.S. at 57, 107 S.Ct. at 1001. This single definition replaces the Court's former approach in which materiality differed according to the nature of a defendant's *Brady* request.[3] Even under the present definition of materiality, the specificity of a defendant's request remains significant. As specificity increases, a lesser showing of materiality will suffice. *Id.* Conversely, as a defendant's request becomes more general, a greater showing of materiality is required. *Id.* Defendant's request, while not document specific, is more narrow than a general request. *See United States v. Agurs,* 427 U.S. at 103–07, 96 S.Ct. at 2397–99; *United States v. Buchanan,* 891 F.2d at 1441. Defendant, however, has not carried his burden to prove even the relatively lesser showing of materiality necessary to compel discovery under *Brady.*

Title 18, section 287 reads:

> Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

The Tenth Circuit has repeatedly stated that to convict a defendant under this statute, the government must prove (1) that the defendant knowingly made and presented to a department or agency of the United States a false, fraudulent or fictitious claim against the United States, and (2) that the defendant acted with knowledge that the claim was false, fraudulent or fictitious. *United States v. Rodriquez,* No. CR–90–00375–01, 1992 WL 7443, at \*2 (10th Cir. Jan. 13, 1992) (citation omitted); *United States v. Kline,* 922 F.2d 610, 611 (10th Cir.1990). Defendant does not appear to argue that he did not make and present the claim at issue. Rather he contends that he did not "know" that the claim was false, fraudulent or fictitious because he did not intend to defraud the government.

Defendant speculates that if the company policy was to estimate the amount of time spent on Medicare and non-Medicare patients and if defendant merely estimated the time spent in each area, then he did not submit a false, fictitious or fraudulent claim with the intent to defraud the government. Conspicuously absent from defendant's argument, however, is any declaration of how defendant earmarked bills for Medicare. Rather, defendant appears to be seeking review of the government's files before deciding how to characterize his own actions. For example, defendant's attorney prefaced his argument for materiality by stating, "If Scott Uphoff in his first few months as nursing home administrator was attempting to provide cost estimates. . . ." Transcript at 12. Later, defendant's attorney reiterated, "And if the defense is going to be that . . . we're

---

3. Formerly, the materiality of evidence depended on whether or not a defendant made a *Brady* request and, if so, whether that request was general or specific. *See United States v. Agurs,* 427 U.S. 97, 103–07, 96 S.Ct. 2392, 2397–99, 49 L.Ed.2d 342 (1976); *United States v. Buchanan,* 891 F.2d 1436, 1441 (10th Cir.1989), *cert. denied,* 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990). In *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), a majority of the Court agreed on a common definition of materiality. The Tenth Circuit has recognized that a single definition now applies in every *Brady* context. *Smith,* 50 F.3d at 827.

just trying to provide the best evidence we can as to what the Medicare costs are ... then I think that's clearly exculpatory if Mr. Uphoff's actions were merely an estimate of the time." Transcript at 12–13. As the Tenth Circuit has stated, however, "The government has no obligation to disclose possible theories of the defense to the defendant." *United States v. Comosona,* 848 F.2d 1110, 1115 (10th Cir.1988). Because defendant has not tied his hypothetical argument for materiality to the facts of this case, the theory does not create a reasonable probability that he did not know the claim he submitted was false, fictitious or fraudulent.

Moreover, even if defendant did merely estimate in accordance with Manor Care policy, he would not be exculpated. Contrary to defendant's contention, the government is not required to prove a specific intent to defraud the government. Rather, "a claim is false or fictitious within the meaning of § 287 if untrue when made, and then known to be untrue by the person making it or causing it to be made." *United States v. Irwin,* 654 F.2d 671, 683 n. 15 (10th Cir.1981) (citation omitted), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982), *overruled on other grounds by United States v. Daily,* 921 F.2d 994, 1004 & n. 11 (10th Cir.1990) (overruling *Irwin's* holding that materiality for purposes of 18 U.S.C. § 1001 is a question of fact). Only where the government alleges fraud must specific intent be proven. *Id.* ("A claim is fraudulent [for purposes of section 287] 'if known to be untrue, and made or caused to be made with the intent to deceive the Government agency to whom submitted.") (citation omitted). Because the government asserts that defendant submitted a false claim, it need not prove an intent to defraud.[4] Because defendant has offered no other argument that the evidence he seeks is material, he has not carried his burden of proof. *Brady* therefore does not require discovery of evidence from the government's investigation of Manor Care facilities regarding Manor Care's corporate practice for documenting Medicare charges.

Finally, defendant has also failed to prove that discovery is warranted under Rule 16. Defendant's request potentially implicates Rule 16(a)(1)(C). Under that section a defendant can discover documents in the government's possession that are "material to the preparation of the defendant's defense." To satisfy materiality under Rule 16(a)(1)(C), a defendant must demonstrate "some indication that the pretrial disclosure of the disputed evidence would [ ] enable[ ] the defendant significantly to alter the quantum of proof in his favor." *United States v. Scott,* No. CR–89–184–T, 1993 WL 411596, at *3 (10th Cir. Oct. 8, 1993) (citation omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 1112, 127 L.Ed.2d 423 (1994). Defendant has advanced no argument that the evidence he seeks is material for purposes of Rule 16(a)(1)(C). Consequently, defendant's failure to carry his burden of proof precludes discovery through either *Brady* or Rule 16. This part of defendant's motion is therefore denied.

### Order

**IT IS THEREFORE BY THE COURT ORDERED** that defendant's motion for discovery (Doc. # 11) is granted in part and denied in part.

**IT IS SO ORDERED.**

---

**4.** The indictment in this case alleges that defendant made claims "knowing such claims to be false, fictitious, and fraudulent." Nevertheless, the government is not required to prove all three in order to obtain a conviction. "The disjunctive term 'or' clearly indicates that making any one of the three types of proscribed claims would subject the claimant to criminal liability." *Id.,* 654 F.2d at 683; *accord Rodriquez,* 1992 WL 7443, at *2 (rejecting the defendant's contention that the government had to prove that his claim was both false and fraudulent by stating that "[i]t is hornbook law that a crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive").