**UNITED STATES of America, Plaintiff,**

v.

**Dan ANDERSON (01), Ronald Keel (02), Robert C. LaHue (03), Ronald H. LaHue (04), Ruth Lehr (05), Dennis McClatchey (06), Mark Thompson (07), Defendants.**

Nos. 98–20030–01–JWL to
98–20030–07–JWL.

United States District Court,
D. Kansas.

Nov. 25, 1998.

**937**

Keith E. Drill, Ronald D. Lee, Jacqueline A. Cook, James R. Wyrsch, Wyrsch, Atwell, Mirakian, Lee & Hobbs, Kansas City, MO, for Dan Anderson.

Robert J. Campbell, James E. Kelley, Jr, Lewis, Rice & Fingersh, L.C., Kansas City, MO, for Ronald Keel.

Bruce C. Houdek, Kansas City, MO, for Robert C. Lahue.

James L. Eisenbrandt, Jeffrey D. Morris, Bryan Cave LLP, Overland Park, KS, for Ronald H Lahue.

Thomas E. Carew, Morrison & Hecker, L.L.P., Kansas City, MO, Gerald A. Feffer, Williams & Connolly, Washington, DC, for Ruth Lehr.

Charles W. German, Scott M. Brinkman, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Dennis McClatchey.

Michael D. Strohbehn, Walters, Bender & Strohbehn, Kansas City, MO, R. Stan Mortenson, Barry J. Pollack, Jody M. Kris, Miller, Cassidy, Larroca & Lewis, Washington, DC, for Mark Thompson.

Tanya J. Treadway, Office of U.S. Attorney, Kansas City, William Bowne, U.S. Department of Justice, Washington, DC, for U.S.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

On November 25, 1998, the court conducted a hearing on some thirty pending motions in this complex prosecution arising out of an alleged Medicare fraud scheme. The court ruled on a number of the motions on the record and took several others under advisement. It is hereby memorializing its rulings on the defendants' discovery related motions for ease of reference by the parties.

### I. Motion for Bill of Particulars (Doc. 199)

Defendants ask the court to order the government to (1) identify overt acts and unindicted coconspirators, (2) clarify "vague and ambiguous allegations" in the indictment, and (3) provide information necessary for the defendants to prepare for trial.

This motion is granted in part and denied in part. The government is ordered to disclose the identities of the unindicted coconspirators as discussed by the court on the record. In all other respects, the motion is denied.

 As this court has written in the past,

The grant or denial of a defendant's request for a bill of particulars rests within the sound discretion of the trial court. The purpose of a bill of particulars is to supplement the allegations in the indictment when necessary to: (i) enable the defendant to prepare his or her defense; (ii) avoid unfair surprise to the defendant

at trial; and (iii) preclude a second prosecution for the same offense. The purpose of a bill of particulars is not to obtain discovery, evidentiary detail of the government's case, or information regarding the government's legal theories. Since the defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case, the district court does not abuse its discretion in denying defendant's motion for a bill of particulars where defendant has been served with a sufficient indictment.

*United States v. Sapp*, 835 F.Supp. 1346, 1348 (D.Kan.1993) (citations omitted); *see also United States v. Walton*, No. 95–20086, 1996 WL 228466, at *1 (D.Kan. April 2, 1996). Unless the request for the bill of particulars shows, on its face, that failure to grant the request would result in prejudicial surprise, the preclusion of an opportunity for meaningful defense preparation, [or double jeopardy problems,] *defendant has the burden* of showing that his or her request meets one of the three criteria. *United States v. Wright*, 826 F.2d 938, 943 (10th Cir.1987) (citing *United States v. Thevis*, 474 F.Supp. 117, 123–24 (N.D.Ga.1979)). The extent of the government's disclosures to the defendant should be a factor in determining whether or not a bill of particulars should be ordered. *See U.S. v. Ivy*, 83 F.3d 1266, 1281–82 (10th Cir.1996).

■ The defendants are entitled to know the identity of any unindicted coconspirators. *See United States v. Taylor*, 707 F.Supp. 696, 700 (S.D.N.Y.1989); *United States v. Rogers*, 617 F.Supp. 1024, 1028 (D.Colo.1985). Without such information, the defendants may be subject to prejudicial surprise or double jeopardy problems. For example, if an unindicted coconspirator were to testify at trial, the nature of the conspiracy and the ties to various defendants might change dramatically. Moreover, leaving unnamed coconspirators undisclosed subjects the defendants to a risk of double jeopardy if the government one day sought to indict the defendants because of their alleged conspiracy with the unnamed coconspirators.

■ The defendants are not entitled to know the overt acts the government will prove at trial. The government argues, "a defendant charged with conspiracy is not entitled to know before trial (1) the means by which a defendant allegedly performed acts in furtherance of the conspiracy, (2) the details as to how and when the conspiracy was formed, (3) the details as to how and when each participant entered the conspiracy, (4) the details of a defendant's personal participation in or knowledge of the activities described in the indictment, (5) the nature of a defendant's participation in the conspiracy, or (6) all of the overt acts that might be proven at trial. *See United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir.1978); *United States v. Carroll*, 510 F.2d 507, 509 (2d Cir.1975); *United States v. Baca*, 494 F.2d 424, 426 (10th Cir.1974) ." Although the court would be within its discretion to order particulars concerning this type of information in a proper case, this type of information is more geared toward discovery—not the avoidance of unfair prejudice. Given the government's claim of "open file" discovery in this case, which the defendants have not successfully refuted, the court does not believe disclosure of the overt acts is necessary.

■ The defendants' requests for clarification of "vague and ambiguous allegations" are without merit because the defendants simply plead in conclusory fashion that clarification is needed "so that the defendants are adequately informed of the nature and cause of the accusations against them and so they may have a fair opportunity to prepare an adequate defense." The defendants' argument is wholly inadequate to meet their burden. Most of the defendants' requests for particulars falling in this category begin as follows: "Identify the factual basis for the allegations . . . ." This is classic discovery, and not a proper subject for a bill of particulars.

Similarly, the defendants' requests for information necessary to prepare for trial are wholly inadequate. The defendants believe they are entitled to particulars because of their conclusory allegation that the information "is needed by the defendants to prepare an adequate defense and to avoid prejudicial

surprise at trial." The defendants simply make no serious attempt to explain how they would suffer prejudicial surprise; an inability to prepare a meaningful defense, or double jeopardy problems if this information is not disclosed.

## II. Motion to Compel Discovery (Doc. 137)

### A. Background

The defendants seek discovery of the following categories of information: (1) official interpretations of the governing statute and results of the government audits of cost reports of Baptist Medical Center ("Baptist"), (2) matters regarding investigative procedures, including any investigative subpoenas, decisions by other U.S. Attorneys not to prosecute, financial incentives to FBI agents and prosecutors, personnel records of FBI agents, and documents concerning lost information or deceased witnesses, (3) grand jury material, (4) matters regarding chart, summary, calculation, and computer based evidence the government intends to use at trial, (5) any other *Brady* information, and (6) specific Rule 404(b) evidence. This motion is granted in part and denied in part. The government shall produce evidence pursuant to this order on or before December 28, 1998.

### B. Legal Framework

#### 1. *Brady*

As the court has written before,

[u]nder *Brady and Giglio*, the government must turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment. The defendant has the burden to prove both that the evidence is favorable and material. [The test is the same whether the defendant seeks to invoke *Brady* at the pretrial stage or on appeal.] Furthermore, unless defense counsel becomes aware that exculpatory evidence is being withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his [or her] own search of the State's files to argue relevance. Brady does not authorize a fishing

expedition through the government's files whenever it is conceivable that evidence beneficial to a defendant may be discovered.

*United States v. Uphoff,* 907 F.Supp. 1475, 1477 (D.Kan.1995) (citations omitted).

█ In the Tenth Circuit, evidence is exculpatory if it is favorable. *Id.* at 1479. The exculpatory nature of particular evidence ... can seldom be predicted accurately until the entire record is complete.... The prosecution will necessarily have to exercise some discretion in determining whether evidence in its possession is exculpatory, and therefore subject to disclosure under *Brady.* The prosecutor must exercise this discretion carefully, however, because [s]he alone can know what is undisclosed, and it is to [s]he alone that we assign the consequent responsibility to gauge the likely net effect of all such evidence .... Moreover, given the prosecutor's unique role in our criminal justice system, [s]he must resolve close cases and doubtful questions in favor of disclosure.

*Banks v. Reynolds,* 54 F.3d 1508, 1517 (10th Cir.1995). Furthermore,

it is worth noting that because impeachment is integral to a defendant's constitutional right to cross-examination, there exists no pat distinction between impeachment and exculpatory evidence under *Brady.... This is especially true where a witness' credibility is material to the question of guilt....* [T]he fact that a particular piece of evidence is probative only for purposes of impeachment is not a defense to a *Brady* claim because impeachment evidence merits the same constitutional treatment as exculpatory evidence.

*Smith v. Secretary of N.M. Dept. of Corrections,* 50 F.3d 801, 825–26 (10th Cir.1995) (emphasis added). *But see United States v. Buchanan,* 891 F.2d 1436, 1443–44 (10th Cir. 1989) (holding that impeachment evidence does not fall within *Brady* or *Giglio* parameters unless it is *material to the question of guilt* ).

█ "Evidence is material only if there is a reasonable probability that, [were] the

evidence [to be] disclosed to the defense, the result of the proceeding would [be] different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Uphoff*, 907 F.Supp. at 1479 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1987)); *see also United States v. Gutierrez–Hermosillo*, 142 F.3d 1225, 1232 (10th Cir.1998). This approach to materiality is a "flexible, sliding scale approach to assessing ... materiality.... [T]he specificity of the request [for production] is inversely related to the prosecution's disclosure obligation. As the specificity of the defendant's request increases, a lesser showing of materiality will suffice to establish a violation. Conversely, as the defendant's request becomes more general or even nonexistent, a greater showing of materiality is required to establish a *Brady* violation." *Smith*, 50 F.3d at 827.

■ At least when looking back in time to evaluate the fairness of a conviction, the Tenth Circuit "evaluate[s] the materiality of withheld evidence in light of the entire record in order to determine if 'the omitted evidence creates a reasonable doubt that did not otherwise exist.'" *Banks*, 54 F.3d at 1518. The Tenth Circuit also "recognize[s] that evidence in the hands of a competent defense attorney [even if not enough to be

material standing alone,] may be used to uncover other leads [1] and defense theories." *Banks*, 54 F.3d at 1519. Of course, the materiality standard is usually applied after trial, where appellate courts have the opportunity to look back at all the evidence to determine whether there was a reasonable probability that the alleged *Brady* material would have affected the outcome. When applying these rules before trial it is appropriate to focus on (1) whether the court's current view of the evidence leads it to believe there is a reasonable probability the information will affect the outcome, and (2) whether the defense request is sufficiently specific.

### 2. Rule 16

■ Fed.R.Crim.P. 16(a)(1)(C) requires the government to disclose certain evidentiary items "which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant." The defendants bear the burden to establish materiality. 8 *Moore's Federal Practice* par. 16.05[1] (1990). Appellate courts reviewing denial of Rule 16 discovery look for "some indication that the pretrial disclosure of the disputed evidence would have

---

1. There is a conflict of authority about whether evidence must be admissible to qualify for disclosure under *Brady*, but the court's reading of the case law convinces it that when the defense couches its *Brady* requests with specificity, evidence probably does not need to be admissible in order to qualify for disclosure. *See Coleman v. Calderon*, 150 F.3d 1105 (9th Cir.1998) ("To be material, evidence must be admissible or must lead to admissible evidence."); *Spence v. Johnson*, 80 F.3d 989, 1005 n. 14 (5th Cir.1996) (admissibility not a factor in *Brady* analysis); *United States v. Derr*, 990 F.2d 1330, 1335 (D.C.Cir.1993) (information must be such that evidence acquired through the information is admissible) (citing *United States v. Kennedy*, 890 F.2d 1056, 1059 (9th Cir.1989) (same)); *United States v. Phillip*, 948 F.2d 241 (6th Cir.1991) (information must "lead directly to" admissible evidence). *Contra United States v. Ranney*, 719 F.2d 1183, 1190 (1st Cir.1983) (evidence must be admissible to constitute *Brady* material); *United States v. Oxman*, 740 F.2d 1298, 1311 (3d Cir. 1984) (evidence must be admissible to constitute *Brady* material), *vacated on other grounds, United States v. Pflaumer*, 473 U.S. 922, 105 S.Ct. 3550,

87 L.Ed.2d 673 (1985); *United States v. Mers*, 701 F.2d 1321, 1340 (11th Cir.1983) (evidence must be admissible to constitute *Brady* material). The Tenth Circuit decisions on this issue carry conflicting implications. In *Trujillo v. Sullivan*, 815 F.2d 597, 612 n. 8 (10th Cir.1987), the Tenth Circuit assumed (without deciding) that evidence must be admissible in order for *Brady* to apply. The court did not reach the issue, however, because it found the admissibility question to be too close a question of state law to call. The court instead found other reasons to hold that *Brady* disclosure was not required. In *Banks*, 54 F.3d at 1519, the Tenth Circuit implied that information need not necessarily be admissible evidence in order to qualify for *Brady* disclosure: "We do recognize that evidence in the hands of a competent defense attorney may be used 'to uncover other leads and defense theories.'" Given that the weight of the more recent authority favors recognizing inadmissible evidence as *Brady* material and given the ambiguous outcome of *Trujillo*, the court believes the Tenth Circuit would adopt the "leads to admissible evidence" standard.

enabled the defendant significantly to alter the quantum of proof in his favor." *United States v. Ross,* 511 F.2d 757, 763 (5th Cir. 1975).

### C. Analysis

**1. Official Interpretations of the Governing Statute and Results of Government Audits of Cost Reports of Baptist (Items 1, 11)** [2]

██ In item 1, the defendants seek all official interpretations from HCFA between 1980 and 1994 concerning the application of the Anti–Kickback Act to agreements between physicians and hospitals or other health care providers. This request is denied. The defendants simply have not shown the court that this evidence would be material. Nowhere do the defendants allege, for example, that they relied on specific documents they know to exist in drafting their allegedly illegal agreements. The defendants' request here reads much more like a general request for documents that they have never seen that might give an opinion that someone else's physician-hospital arrangement did not violate the Anti–Kickback Act. The danger with allowing the defendants to "fish" for such evidence is the temptation to claim ex post facto reliance on such documents at trial. The defendants allege merely that the evidence is "directly relevant to [their] state of mind" and that the evidence *may* "show lack of criminal intent, based on [their] knowledge of [HCFA's] official and 'semi-official' statements regarding similar arrangements between doctors and hospitals." The fact that the defendants only believe the documents *may* show lack of criminal intent indicates that they probably did not rely on such documents, and that they in any event are likely on a fishing expedition. The defendants' request is simply not very specific under these circumstances, and the court does not believe the defendants have demonstrated a reasonable probability that the evidence would affect the outcome at trial.

In item 11, the defendants request "All documents concerning HCFA or HCFA intermediary or carrier audit or reviews of physician contracts as reflected on cost reports at [Baptist] from 1984–1995, including HCFA guidelines and standards for audits and reviews." The court denies this request for essentially the same reasons it denied the request in item 1. Moreover, the documents sought here are apparently internal government documents on which the defendants simply could not have relied.

**2. Matters Regarding Investigative Procedures (Items 2, 3, 6–9, 12, 15, and 16)**

██ Item 2 requests copies of subpoenas issued pursuant to 18 U.S.C. § 3486.[3] The court denies this request. The defendants make no showing of how this information might be exculpatory or otherwise material. They merely posit that the government might have violated the § 3486 procedures before the grand jury, but they offer no concrete allegations along those lines.

██ Item 12 seeks "[a]ny tax return, or return information that was disclosed by the internal revenue service," including supporting documentation. The court grants this request to the extent the government has tax returns *of any defendant.* A defendant's tax return is a statement of the defendant and is therefore discoverable pursuant to 16(a)(1)(A). Of course, Baptist is not a defendant in this case and the government need not disclose Baptist's tax returns.

██ Item 3 seeks information concerning the alleged decision of the United States Attorney's office for the Western District of Missouri (or any other governmental agency) to decline to prosecute Baptist or any defendant. The court denies this request. The defendants make no showing of how the bare fact of a declination to prosecute would be admissible at trial, or how it might lead to the discovery of admissible evidence. The defendants do not allege that they ever relied on a decision not to prosecute, so the evidence cannot be relevant to the defendants' intent.

---

**2.** The court evaluates the defendants' requests in the order in which they were briefed.

**3.** 18 U.S.C. § 3486 gives the government broad subpoena power in health care offense cases.

■ Item 6 seeks records of "money and time spent during the course of the investigation culminating in the present charges, including time sheets, other documents showing time spent on the case, payroll expenditures and direct expenses related to the investigation." This request is denied. The defendants argue that the excessive cost of the investigation is exculpatory and material because it shows how the FBI agents and prosecutors are biased in that they need to prosecute in order to justify the excessive cost. The defendants' request is overbroad and therefore weighs against materiality. Moreover, the evidence would have no probative value at trial.

■ Item 7 requests information concerning incentive payments made to prosecutors or FBI agents in this case or the case against Baptist. The court grants this request because it seeks material exculpatory information. The evidence, if it existed, would tend to show that the government is biased.

Item 8 requests information concerning commendations or financial remunerations received by FBI agents as a result of the indictment in this case, the Baptist case, the settlement by Bethany Hospital, or the criminal case against Tom Eckard. The court grants this request for the same reasons it grants item 7.

■ Item 9 requests the personnel files of all FBI agents and HCFA investigators who have participated or assisted in the preparation and investigation of this case. The court denies this request. The evidence sought is not material because there is no reason to believe that the credibility of government agents will be a decisive issue at trial. *Cf. United States v. Kiszewski,* 877 F.2d 210, 215–16 (2d Cir.1989) (trial court erred in refusing to compel disclosure of personnel file that showed key government agent was untrustworthy where prosecution hinged on credibility of agent). Moreover, there is no reason to believe any derogatory items in a government agent's personnel file would be admissible or lead to admissible evidence.

■ Item 15 seeks statements made or given to the government by people who died or became otherwise unavailable. The court denies this request. The request does not meet the materiality requirements of *Brady* because it is far too broad. The request does not meet the exculpatory requirements of *Brady* because the defendants have made no showing that any such evidence would be favorable. The government has represented that it has disclosed all evidence generally falling within the *Brady* rubric, and this is all that is required in response to the defendants' general request.

■ Item 16 seeks information concerning documents that have been lost or destroyed, including any evidence concerning the reason for the loss or destruction. This request is granted to the extent any exculpatory documents were destroyed. If exculpatory documents were purposefully destroyed or lost, the defendants are undoubtedly entitled to know why. On the other hand, the defendants have given no reason to believe any documents have been destroyed.

### 3. Grand Jury Material (Items 4 and 5)

■ Items 4 and 5 seek information concerning the operation of the grand jury. The court denies item 4 and grants item 5 in part. The defendants ask the court to review the grand jury proceedings *in camera* to determine whether anything improper occurred. For the most part, the defendants are fishing here, and the court refuses to bite. Item 5 is granted however, to the extent it asks the court to review *in camera* the voting record of the grand jury. The Tenth Circuit "believe[s] defendants are entitled to the assurance of the district judge that the judge has inspected the [grand jury foreperson's] report and it contains twelve or more votes to indict. But anything more, except upon a showing of particularized need, would negate Rule 6(c)'s requirement of secrecy absent an 'order of the court.'" *United States v. Deffenbaugh Indus.,* 957 F.2d 749, 757 (10th Cir.1992).

### 4. Matters Regarding Chart, Summary, Calculation, and Computer Based Evidence the Government Intends to use at Trial (Items 13 and 14)

In item 13, the defendants seek the underlying factual basis for any chart, summary, or

calculation the government intends to use at trial. The court believes this request is unnecessary because the government is bound to produce this material at a "reasonable time and place" pursuant to Fed.R.Evid. 1006. The court shall require the government to comply with that rule no later than January 4, 1999.

▮▮ In item 14, the defendants seek documents concerning the process and output of any computer system upon which trial witnesses will rely. The court denies this request. There is no reason to believe such information would be exculpatory, and the request is much too broad to be material.[4] The cases cited by the defendants in favor of disclosure speak generally to the hearsay implications of relying on computer generated results. *See, e.g., United States v. Trenkler*, 61 F.3d 45, 58 (1st Cir.1995). Of course, if the government intends to rely on computer generated results, it will have to overcome any hearsay objection. There is no reason, however, to order disclosure of the evidence sought under *Brady* or Rule 16.

### 5. Other *Brady* Information (Items 10 and 17)

▮▮ Item 10 requests thirteen different categories of information (a through m). Item 10(a) requests documents that show any arrest, conviction, guilty verdict, guilty plea, or other misconduct of any prospective government witness. This request is granted in part and denied in part. The request is granted to the extent it seeks evidence of criminal convictions punishable by death or imprisonment for more than one year, *see* Fed.R.Evid. 609(a)(1), or criminal convictions for offenses involving dishonesty or false statements, *see* Fed.R.Evid. 609(a)(2), occurring within ten years of the date the witness will testify. *See* Fed.R.Evid. 609(b). The request is otherwise denied.

▮▮ Item 10(b) seeks documents related to promises, consideration, or other inducements given to any prospective government witness, whether made or given directly to the witness or indirectly to the witness' family or business. This request is granted with respect to government witnesses who will testify at trial.

▮▮ Item 10(c) seeks documents concerning any reward claimed, received, or promised to any prospective government witness. This request is granted.

Items 10(d), 10(e), and 10(f) are denied because they are far too broad to meet the materiality requirement.

▮▮ Item 10(g) seeks documents concerning any oral or written statements made by any person which contradicts or is inconsistent with any oral or written statements made by any prospective witness. This request is granted in part and denied in part. The request is granted as to any contradictions or inconsistent statements made by a government witness about that witness' testimony. The request is also granted as to any direct contradictions made by a government witness about another government witness' testimony. The request is denied as to inconsistent statements made by a government witness about another government witness' testimony, because the request is too broad in this regard.

▮▮ Item 10(h) essentially seeks any and all express or implied threats against any expected government witness. This request is granted in part and denied in part. The request is granted to the extent it seeks any pending suit or claims against government witnesses by the federal government. In all other respects, it is denied because it is too broad to meet the materiality requirement.

Items 10(i) and 10(j) are denied because they are far too broad to meet the materiality requirement.

▮▮ Item 10(k) seeks all documents concerning any requests prepared by the government for permission to grant immunity or leniency for any defendant or witness. This request is granted to the extent it seeks documents that reflect that immunity has been granted, offered, promised, or discussed

---

**4.** The request might require the government to provide manuals for Microsoft Windows 95 software, for example.

with any government witness. It is otherwise denied as overbroad.

Item 10(*l*) seeks all documents tending to impeach the credibility of any hearsay declarants upon whose statements the government intends to rely. The court assumes the government has already provided this material, but the request is granted to the extent the government has not already provided it.

Item 10(m) is denied because it is far too broad.

Item 17 seeks rough notes of witness interviews conducted by government agents which are exculpatory to these defendants. This request is granted because the government has made no showing it should be denied.

### 6. Rule 404(b) Evidence (Item 18)

Item 18 seeks specific 404(b) evidence the government intends to introduce at trial. The court denies this request as moot because the government has agreed to produce such evidence in compliance with the court's scheduling order.

### III. Motion for Rule 17(c) Subpoenas

The defendants seek subpoenas pursuant to Fed.R.Crim.P. 17(c) as follows: (1) Mutual of Omaha's HCFA or HCFA intermediary cost reports or other audits or reviews of physician contracts involving defendant Robert LaHue or his business and Baptist Medical Center from 1984–1995, including specific information concerning audit standards, (2) OIG documents concerning advisory letters issued by HCFA concerning the application of the Anti–Kickback Act to physician agreements with hospitals. The court denies these requests.

Fed.R.Crim.P. 17(c) provides in pertinent part:

> The court may direct that books, papers, documents, or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

A Rule 17(c) subpoena "was not intended to provide a means of discovery for criminal cases ... but to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. King*, 164 F.R.D. 542, 545 (D.Kan.1996) (quoting *United States v. Nixon*, 418 U.S. 683, 698–99, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)). "In other words, Rule 17(c) is not a discovery tool but offers compulsory process for securing specific, identifiable evidence for trial." *Id.* (quoting *United States v. Jackson*, 155 F.R.D. 664, 667 (D.Kan.1994)).

The *Nixon* court stated that before a trial court issues an order authorizing a Rule 17(c) subpoena, the trial court, in its discretion, must conclude that the moving party has demonstrated: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." 418 U.S. at 699–700, 94 S.Ct. 3090; *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir.1981). The *Nixon* court summarized the moving party's burden as clearing the three hurdles of relevancy, admissibility, and specificity. *Nixon*, 418 U.S. at 700, 94 S.Ct. 3090.

That the requested material is "potentially" relevant or admissible is not enough, for both tests must be satisfied when the evidence is sought. *King*, 164 F.R.D. at 545 (citing *United States v. Burger*, 773 F.Supp. 1419, 1425 (D.Kan.1991), *conviction aff'd. but remanded for resentencing*, 964 F.2d 1065 (10th Cir.1992)). There must be a "sufficient likelihood" that the requested material is "relevant to the offenses charged in the indictment," and a "sufficient preliminary showing that ... [the requested material] contains evidence admissible with respect to the offenses charged." *Id.* (quoting *Nixon*, 418 U.S. at 700, 94 S.Ct. 3090). Conclusory

allegations of relevance and admissibility are insufficient. *Id.* (citations omitted).

Specificity is the most difficult hurdle to overcome. *King,* 164 F.R.D. at 545. The specificity requirement ensures that Rule 17(c) subpoenas are used only to secure for trial certain documents or sharply defined groups of documents. *Id.* (citations omitted). The specificity requirement also prevents the moving party from using the Rule 17(c) subpoena as a license for what the Supreme Court in *Bowman Dairy Co. v. United States,* 341 U.S. 214, 221, 71 S.Ct. 675, 95 L.Ed. 879 (1951), decried as a "fishing expedition to see what may turn up." *See King,* 164 F.R.D. at 545. One of the major purposes of the specificity requirement is to provide the subpoenaed party or other party having standing with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility. *Id.*

■ As a result, in order for the court to authorize a Rule 17(c) subpoena, the moving party must be able to describe specific documents or, at least, specific kinds of documents. *Id.* at 546. Moreover, the moving party must specify why the materials are wanted, what information is contained in the documents, and why those documents would be relevant and admissible at trial (citations omitted). Without detailed information on the requested documents, a court is only left "to speculate as to the specific nature of their contents and its relevance." *Id.* (citing *United States v. Arditti,* 955 F.2d 331, 346 (5th Cir.1992)).

■ The court, in its discretion, does not believe that the defendants are entitled to the subpoenas. *See United States v. Carroll,* No. 96–20024, 1996 WL 442213, at *4 (D.Kan. July 3, 1996) (denying Rule 17(c) subpoenas in similar case). The defendants' request for ill-defined documents from Mutual of Omaha and HCFA simply does not explain what information might be contained in the documents,[5] and, more importantly, it does not explain how the documents sought would be

admissible at trial. Notably, the defendants do not allege that the documents would tend to show their innocent intent, i.e. that they relied in good faith on any of the documents they now seek, nor have they sufficiently explained how the documents might be relevant to show anything other than intent. In fact, many of the documents the defendants seek are apparently internal government documents that the defendants simply could not have relied on in crafting the agreements that are the subject matter of this case. The mere fact that HCFA officials or other government agents were unable to detect illegal activity during their reviews of the defendants' conduct is simply irrelevant to whether the defendants actually were engaging in illicit conduct.

**IT IS THEREFORE ORDERED BY THE COURT** that the motion for bill of particulars (Doc. 199) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the motion to compel discovery (Doc. 137) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the motion for Rule 17(c) subpoenas is denied.

**IT IS SO ORDERED.**

### *MEMORANDUM AND ORDER*

On November 25, 1998, the court entered an order requiring the government to produce certain discovery pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in this complex prosecution arising out of an alleged Medicare fraud scheme. The government has moved the court for reconsideration. For the reasons set forth below the government's motion is granted in part and denied in part.

Because there is no provision for a motion to reconsider in the Federal Rules of Criminal Procedure, federal courts recognize motions to reconsider pursuant to the common law doctrine recognized in *United States v. Healy,* 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964). *See also United States v. Corey,* 999 F.2d 493, 495 (10th Cir.1993). Where

---

**5.** Indeed, counsel at oral argument admitted not knowing the important details of how the docu-

ments sought were allegedly generated.

such motions seek the court's reconsideration of dispositive rulings, they are essentially treated the same as motions to alter or amend judgment in the civil context under Fed.R.Civ.P. 59(e). *United States v. Schweibinz*, No. 93–40001–06–SAC, 1994 WL 129998, at *1 n. 1 (D.Kan. March 15, 1994). Where, as here, such motions seek the court's reconsideration of nondispositive rulings, it is more appropriate to apply the same standard as for motions to reconsider pursuant to D. Kan. R. 7.3 ("A motion to reconsider shall be based on (1) an intervening change in controlling law, (2) availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice."). The opportunity to present a motion to reconsider should not be viewed as a second opportunity "for the losing party to make its strongest case or to dress up arguments that previously failed." *Schweibinz*, 1994 WL 129998, at *1 n. 1. Whether to grant or deny a motion to reconsider is committed to the district court's sound discretion. *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir.1997).

The government first asks the court to reconsider its order requiring the government to disclose incentive payments made to prosecutors or FBI agents in this case or the case against Baptist and any commendations or financial remunerations received by FBI agents as a result of the indictment in this case, the Baptist case, the settlement by Bethany Hospital, or the criminal case against Tom Eckard. The government advances three arguments in favor of reconsideration. First, the government complains that the court has not required the defendants to show the requested information even exists Second, the government complains that the information ordered to be disclosed is not material because the credibility of government agents will not be a material issue in this case. Finally, the government complains that the court's order is too broad in that it orders disclosure of incentives to prosecutors and other non-witnesses.

The court disagrees with the government's first and second arguments. The government is correct that the court has not required the defendants to show that the

sought-after information actually exists; however, this is of no moment. The court's order focuses on '(1) whether the court's current view of the evidence leads it to believe there is a reasonable probability the information will affect the outcome, and (2) whether the defense request is sufficiently specific." *United States v. Anderson*, 31 F.Supp.2d 933, —— (D.Kan.1998) ("November 25 Order"). Here, the court's current view of the evidence is that some or all of the defendants will vigorously contend that the government's allegations in this case are vastly overreaching. Moreover, it would be hard to imagine a defense request along these lines that is more specific. In the court's view, any evidence that testifying government agents are receiving or have received commendations or incentive payments as described in the court's November 25 order would have a reasonable probability to affect the outcome because it would be proper impeachment evidence of bias, tending to show that the agent's testimony is colored by personal financial or professional advancement considerations and is not worthy of belief. *Cf. Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (sovereignty's "interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done.").

On the other hand, the court narrows its ruling, despite the government's failure to argue the specifics of the defendants' request in its original papers, because its original scope goes beyond what would appear to the court to be admissible evidence at trial. To qualify for disclosure under Brady, evidence must be admissible or must lead to admissible evidence. *See* November 25 Order, at 7–8 n. 1. The defendants have not shown how incentives might be admissible at trial other than as impeachment evidence tending to show bias of government agent witnesses. *See United States v. Abel*, 469 U.S. 45, 51, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Accordingly, the court alters its November 25 Order and requires the government to disclose[1] (1) any incentive payments, commen-

---

1. The government's disclosure obligation includes only incentive payments, commendations,

dations, or financial remunerations paid or offered to government agents who will testify at trial; and (2) any incentive payments, commendations, or financial remunerations paid or offered to non-testifying government agents (including prosecutors) or to other non-witnesses at the direction or approval of government agents who will testify at trial.

The government next asks the court to reconsider or clarify its order concerning inconsistent or contradictory oral or written statements made by prospective government witnesses. The court ordered the government to produce "any contradictions or inconsistent statements made by a government witness about that witness' testimony [and] any direct contradictions made by a government witness about another government witness' testimony." November 25 Order, at 16. The government complains that the November 25 Order does not appear to be limited to material contradictions and inconsistencies. *See United States v. Uphoff,* 907 F.Supp. 1475, 1479 (D.Kan.1995). The government also complains that the order requires the government to anticipate all of its witness' trial testimony.

The court clarifies its order as follows: the court's order should be read to require the production of only material contradictions and inconsistencies concerning only actual testimony at the grand jury and expected testimony at trial.[2] On the specificity/probability of affecting the outcome scale, the defense request spoke only in broad generalities. Moreover, there is no reason to believe minor inconsistencies[3] will have a probability to affect the outcome at trial.

The government next asks the court to reconsider and limit its order requiring the government to disclose "any pending suit or claims against government witnesses by the federal government." November 25 Order, at 17. The government contends the court's order is too broad and that it should not be required to seek out information across the vast bureaucracy.

Although the court notes the government did not argue this point in connection with the original motion, the court agrees with the government and grants the government's motion for reconsideration because to do otherwise would be to allow a "manifest error of law." *See Phelps,* 122 F.3d at 1324. As Judge Crow explained,

> *Brady* requires the government to disclose only the material exculpatory evidence that is in its possession. "Possession" for *Brady* purposes is determined by several governing principles. "It is well settled that there is no 'affirmative duty upon the government to take action to discover information which it does not possess.' " ... At the same time, what the government possesses is not determined only from what the prosecution has in its file. "[A] prosecutor's office cannot get around Brady by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case." ... "If a federal prosecutor has knowledge of and access to exculpatory information as defined in *Brady* ..., then the prosecutor must disclose it to the defense." ... A duty to search files maintained by government agencies closely aligned with the prosecution may be triggered when there is some reasonable prospect or notice of finding exculpatory evidence. Mere possibilities or utter speculation will not give rise to this duty to search.... "As the burden of the proposed examination rises, clearly the likelihood of a pay-off must also rise before the government can be put to the effort." ...

or financial remunerations in connection with this case, the Case against Baptist, the settlement by Bethany Hospital, or the criminal case against Tom Eckard.

2. This duty shall be ongoing and should the government first determine that evidence covered hereby is available at the time or after a witness testifies at trial, the government will immediately notify the court and opposing counsel.

3. The government posits the hypothetical situation where one of its witnesses testified at the grand jury that she worked at Baptist Medical Center between February, 1987 and March, 1993, but the witness's resume indicates she worked at Baptist between January 1987 and April 1993. Although such evidence is marginally exculpatory because it would tend to impeach the government witness, it simply is not material and need not be produced in the absence of a further showing by the defense why such information would be material.

*United States v. Jackson*, 850 F.Supp. 1481, 1502 (D.Kan.1994) (citations omitted). At the same time,

> the agency charged with administration of the statute, which has consulted with the prosecutor in the steps leading to prosecution, is to be considered as part of the prosecution in determining what information must be made available to the defendant charged with violation of the statute. The government cannot with its right hand say it has nothing while its left hand holds what is of value.... The government in the form of the prosecutor cannot tell the court that there is nothing more to disclose while the agency interested in the prosecution holds in its files information favorable to the defendant.

*United States v. Wood*, 57 F.3d 733, 737 (9th Cir.1995) (citations omitted). Accordingly, the court modifies its November 25 Order to require the government to disclose any pending suit or claims against government witnesses by the federal government that is known to any person involved in the investigation or prosecution of this action, the action against Baptist Medical Center, the settlement by Bethany Hospital, or the criminal case against Tom Eckard, no matter what agency actually employs the involved person. In this way, the government can avoid the burden of having to "search files," based on mere the mere possibility that something fruitful will turn up, *see Jackson*, 850 F.Supp. at 1502, but can at the same time avoid saying it has nothing in its right hand "while its left hand holds what is of value." *Wood*, 57 F.3d at 737.

Finally, the government asks the court to reconsider its order requiring the government to produce "rough notes of witness interviews conducted by government agents which are exculpatory to these defendants." November 25 Order, at 17; *see also United States v. Pelullo*, 105 F.3d 117, 123 (3d Cir. 1997) (conviction reversed on collateral attack because material exculpatory information appearing in FBI agent's rough notes but not in FBI 302 report was not disclosed). The court made this order because it held that the government had made no showing that the defendants' request for the rough notes should be denied. The government contends that the court's ruling was incorrect because it did argue that the defendants' request should be denied. Moreover, the government contends that it already has sufficiently responded to the defendant's request for this information in the form of redacted FBI 302s, and that any further information would be duplicative. The government claims that the production would be burdensome and time-consuming because it would require "re-reviewing hundreds of interview reports and their corresponding rough notes, and then producing redacted rough notes."

Although the court disapproves of the government's practice of making broad, general arguments and expecting the court to indulge the government by searching for ways to apply the arguments in order to deny the defense's itemized requests, the court agrees that the government's response to the original discovery motion could be construed to argue that the defendants had not made the requisite showing that exculpatory information exists and is being withheld. See Government's Consolidated Response Brief, Doc. 173, at 166 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) ("In the typical case where a defendant makes only a general request for exculpatory material under *Brady*, ... it is the [government] that decides which information must be disclosed.")). Here, however, the government's general arguments are insufficient because the defendants' broad request for exculpatory rough notes was coupled with the contention that witnesses have explained how FBI agents interviewing them refused to write when the witnesses provided "favorable information." Moreover, the defendants' response to the pending motion indicates that "a number of witnesses have indicated that [favorable] information was discussed in the interviews but for some reason does not appear in the [FBI 302s]."

Accordingly, the court generally denies the government's motion on this point, but limits the government's disclosure requirement to (1) material and exculpatory information from rough notes' taken by FBI agents who will testify at trial and (2) previously undisclosed material and exculpatory information from rough notes taken by FBI agents who

will not testify at trial. Of course, the government must disclose material and exculpatory information appearing in all FBI rough interview notes to the extent the information does not appear in the FBI 302 reports already disclosed. This disclosure requirement clearly falls within the *Brady* mandate. The government must also disclose, however, the specific material and exculpatory information appearing in rough notes taken by any FBI agent who will testify at trial, even if that information duplicates information already provided in FBI 302 reports. On these facts, evidence of material and exculpatory information appearing in a testifying FBI agent's rough notes (as distinct from his or her 302 reports) falls within the *Brady* mandate because it is exculpatory in ways different from the information provided in the 302 reports. The 302 reports provide information that is exculpatory because the information tends to lend credence to the defendants' version of events. Duplicative information found in a testifying FBI agent's rough notes, however, is exculpatory because it will, according to the defendants, lead to admissible impeachment evidence against the testifying agent. That is, the information will lead to evidence that the testifying FBI agent conducted a biased investigation by ignoring exculpatory evidence or by altering the import of it in the process of converting from rough notes to 302s. Moreover, the very process the FBI uses, spurning recording devices and relying on agent note taking, tends to lend credence to the defendants' argument that exculpatory witness comments were ignored. Variance between rough notes and 302s, even as to material which is duplicative, is proper grist for impeachment for bias. Evidence along the lines which defendants seek here would have a reasonable probability to affect the outcome of the case and would be highly material.

IT IS THEREFORE ORDERED BY THE COURT that the government's motion for reconsideration (Doc. 209) is granted in part and denied in part.

IT IS SO ORDERED.